Taft, J.
 

 The first question to be considered is whether the trial court erred in refusing to grant the railroad’s motion for a directed verdict made at the close of all the evidence. In passing upon this motion, the trial court was required to construe the evidence most strongly in plaintiff’s favor.
 
 Hamden Lodge
 
 v.
 
 Ohio Fuel Gas Co.,
 
 127 Ohio St., 469, 189 N. E., 246.
 

 
 *152
 
 On this question, much of the argument of the railroad is based upon the premise that reasonable minds can come only to the conclusion that the train was occupying the crossing at a time when the defendant Jerman’s automobile was a substantial distance from the crossing.
 

 Since the crossing was lighted by a city street light on a telegraph pole at a point on the tree-lawn on the west side of the street about 40 feet from the tracks, it might be impossible to answer the railroad’s argument if the above premise is sound. This would be especially true, if it were a fact, as practically all the witnesses who were in a position to know testified and as plaintiff’s attorney conceded for the purpose of his argument to the jury, that the watchman Paris was standing with his lantern in the middle of the street on the south side of the tracks. Assuming that the jury might reasonably infer that the lantern was being held so that its side shields prevented its red light from being visible to the south, could the jury have reasonably inferred that Jerman, who did not see the slow moving train or the watchman, would have seen the red light if it had been pointed toward him? See
 
 Cobb, Jr., Admr.,
 
 v.
 
 Bushey,
 
 152 Ohio St., 336, 89 N. E. (2d), 466.
 

 The difficulty with this position of the railroad is that the evidence in the record is in conflict on the questions as to whether the watchman was in the street and as to whether the train was on the crossing at a time when the defendant Jerman was a substantial distance from the crossing.
 

 We share with the railroad the doubt as to whether any credence should be given to the testimony, especially that of defendant Jerman, tending to prove that the watchman was not there and the train was not on the crossing at that time. Apparently that doubt was also shared by counsel for the plaintiff, who
 
 *153
 
 indicated that doubt by several statements made during his argument to the jury, the last of which was: “I am not asking you to return a verdict against the railroad because of anything John Damm has said or Joseph Jerman has said.”
 

 However, as we understand it, whether a witness was telling the truth or was mistaken was a question for determination by the jury. It is true that, in the instant case, the admissions made by the defendant Jerman before the trial contradicted his testimony at the trial on most vital points. However, while extrajudicial statements of a party or a witness, contradicting the testimony which he gives at the time of tiial, may have great weight, they are rarely, if ever, conclusive of facts to which they relate. See
 
 Harrison
 
 v. Castner, 11 Ohio St., 339;
 
 Morgan
 
 v.
 
 Spangler,
 
 14 Ohio St., 102;
 
 Perkins
 
 v.
 
 Benguet Consolidated Mining Co., ante,
 
 116. That does not result in a party to a law suit having no protection against false testimony. A witness is required to take an oath before giving his testimony and is subject to prosecution for perjury if he gives false testimony. Furthermore, juries have the duty to detect and disregard false testimony. Finally, in the event that a jury does not detect and disregard false testimony, the trial court and the Court of Appeals each has a clear duty to grant a new trial on the weight of the evidence where it appears probable that a verdict is based upon false testimony.
 

 The question on a motion to direct a verdict is not the same as that presented on a motion to grant a new trial on the weight of the evidence. Even if the evidence is such that any verdict rendered for one of the parties would necessarily be against the weight of the evidence, it does not follow that the other party is entitled to a directed verdict.
 

 If, notwithstanding the other testimony and evi
 
 *154
 
 dence to the contrary, the jury believed the testimony given by the plaintiff’s witness Damm and by the defendant Jerman at the time of the trial in the instant case, then the jury could have found that defendant Jerman was driving about 30 to 35 miles per hour and was relying on a watchman to warn of any approaching train; that he did not hear the statutory bell and whistle warnings which were given; that his view of any train approaching from his left at the 60 degree angle involved would be obstructed by buildings and trees until he was within about 30 or 40 feet of the tracks; that there was no watchman at the crossing; and that the train did not reach the crossing until the defendant Jerman was about 50 feet, or at most 100 feet, from the crossing. If the jury found that those were the facts, then two problems would arise. These problems were whether jury questions were presented as to (1) negligence of the railroad in failing to warn defendant Jerman of the approach of its train and (2) the proximate causal relationship between any such negligence and the plaintiff’s injuries.
 

 On the first problem, it is obvious that the railroad could not be negligent in failing to give defendant Jerman extrastatutory warnings of the approach of its train unless it was under a duty to so warn him.
 

 In the recent case of
 
 Woodworth, Admx.,
 
 v.
 
 New York Central Rd. Co.,
 
 149 Ohio St., 543, 80 N. E. (2d), 142, it is said, on page 551 of the court’s opinion by Hart, J.:
 

 “The record shows that the railroad company had complied with the statutory requirements with reference to warning signs and the blowing of whistles * * *. The law does not require railroad companies to place signals, gates or flashers at highway crossings unless ordered by the Public Utilities Commission, or unless such crossings are especially dangerous or there
 
 *155
 
 exist special circumstances which, render such precautions necessary for the public safety.” See, also,
 
 Capelle
 
 v.
 
 Baltimore & Ohio Rd. Co.,
 
 136 Ohio St., 203, 24 N. E. (2d), 822;
 
 Reed, Admr.,
 
 v.
 
 Erie Rd. Co.,
 
 134 Ohio St., 31, 15 N. E. (2d), 637.
 

 Apparently, in recognition of the rule- of law announced in such decisions of this court, plaintiff has argued that, as “the railroad crossing involved was unusually hazardous, ’ ’ the railroad had a duty to give the defendant Jerman an exfrastatutorv warning of the approach of its train to this crossing.
 

 We believe that it is an oversimplification to argue that, because a railroad crossing may be unusually hazardous at certain times or under certain circumstances, the railroad has a duty to give any such extra-statutory warning to all approaching traffic whenever a train is proposing to occupy the crossing. For example, at the crossing involved in the instant case, an automobile approaching from the south would certainly not be confronted Avith any unusual hazard if the only train approaching the crossing was one approaching from the northeast. The evidence shows that traffic approaching from the south had a clear view to the northeast. Also, we do not believe that such a driver would be confronted with any unusual hazard merely by reason of the approach of the train Avhich occupied the crossing immediately before or at the time that Jerman’s car had almost reached that crossing. The evidence disclosed that this train was moving at a speed between 10 and 20 miles per hour with the lighted locomotiAre headlight at the front of the train.
 

 However, where, as here, a railroad undertakes to give extrastatutory warnings of all trains approaching its crossing, and that is known to a motorist, does the railroad OAve a duty to so warn that motorist where it
 
 *156
 
 would not have owed such duty if it had not undertaken, with his knowledge, to so warn of all approaching trains?
 

 On this question, the law, as announced in paragraph three of the syllabus in
 
 Railroad Co. v. Schneider,
 
 45 Ohio St., 678, 17 N. E., 321, appears to be directly in conflict with that announced in paragraph two of the syllabus in
 
 Columbus, Delaware & Marion Electric Co.
 
 v.
 
 O’Day, Admr.,
 
 123 Ohio St., 638, 176 N. E., 569, and, to some extent, in conflict also with the law as announced in paragraph one of the syllabus in
 
 Toledo Terminal Rd. Co. v. Hughes,
 
 115 Ohio St., 562, 154 N. E., 916, and in the syllabus in
 
 Lohrey
 
 v.
 
 Baltimore & Ohio Rd. Co.,
 
 131 Ohio St., 386, 3 N. E. (2d), 54. Also, the statements in the syllabi of the latter two cases, indicating that the driver is entitled to place reliance upon the indication of safety which either silence of an automatic signal or upright gates imply, seems to be in conflict with the law as announced in the
 
 O’Day case.
 

 A distinction might be made between crossings guarded by gates or even by automatic signals and those guarded merely by watchmen. Where there are gates or automatic signals, even strangers might reasonably anticipate that their failure to indicate an oncoming train was an indication that the tracks were clear. On the other hand, where a motorist knows that watchmen are on duty at all times to warn of the approach of all trains, there would seem to be no distinetion between the case where a crossing is guarded by gates or automatic signals and the case where a crossing is guarded by such watchmen.
 

 Where a railroad does undertake to provide a watchman to warn of the approach of all trains at a crossing, it should reasonably anticipate the effect of its having undertaken such an obligation. If it does, it may readily anticipate injuries to innocent parties
 
 *157
 
 due to a failure to give a customary warning which is reasonably expected by a motorist. In effect, the railroad has so acted as to induce others to act in reliance upon its action. Even if such others are negligent as a matter of law in so acting, the result of the action of the railroad may be to put innocent third parties in peril.
 

 The question whether a railroad has the duty to warn a motorist of an approaching train other than by bell or whistle signals, where no unusual hazard is involved but the motorist knows that watchmen are customarily on duty at all times, has not been decided by this court in any case involving injuries to parties other than tEe drlversof vehicles. The conduct of such drivers has usually been such as to amount to contributory negligence barring their recovery as a matter of law so that the question of the negligence of the railroad has not been a question of any substantial importance in those cases. In the instant case, it is not necessary to determine whether the law, as announced in the third paragraph of the syllabus in the
 
 Schneider case,
 
 would be followed in an action by a driver.
 

 The rule generally recognized is that, notwithstanding that a railroad is under no duty to maintain a flagman at a particular crossing, if it has customarily provided one to warn of the approach of all trains to that crossing, then, at least so far as persons who know, of that customary practice are concerned, the failure of a watchman to warn of an approaching train may constitute negligence, even in an instance where the approach of such train would not ordinarily involve an unusual hazard to an approaching automobile. We believe that this conclusion is supported by paragraph three of the syllabus in the
 
 Schneider case,
 
 by the great weight of authority outside this state, and is not inconsistent with the law as announced in
 
 *158
 
 the
 
 Hughes
 
 and
 
 Lohrey cases. Erie Rd. Co.
 
 v.
 
 Stewart,
 
 40 F. (2d), 855; Ray v.
 
 Hines, Dir. Genl.,
 
 118 Wash., 530, 203 P., 929;
 
 Cincinnati, New Orleans & Texas Pacific Ry. Co.
 
 v.
 
 Prewitt’s Admr.,
 
 203 Ky., 147, 262 S. W., 1;
 
 Bluhm
 
 v.
 
 Byram,
 
 193 Wis., 346, 214 N. W., 364;
 
 Langston
 
 v.
 
 Chicago & Northwestern Ry. Co.,
 
 398 Ill., 248, 75 N. E. (2d), 363;
 
 Ernst, Exrx.,
 
 v.
 
 Hudson River Rd. Co.,
 
 39 N. Y., 61, 100 Am. Dec., 405;
 
 Pittsburgh, Cincinnati & St. Louis Ry. Co.
 
 v.
 
 Yundt,
 
 78 Ind., 373, 41 Am. Rep., 580;
 
 Midland Valley Rd. Co.
 
 v.
 
 Shores, 40
 
 Okla., 75, 49 L. R. A. (N. S.), 814, 136 P., 157;
 
 Montgomery
 
 v.
 
 Missouri Pacific Ry. Co.,
 
 181 Mo., 477, 79 S. W., 930;
 
 Dolph
 
 v.
 
 New York, New Haven & Hartford Rd. Co.,
 
 74 Conn., 538, 51 A., 525. See 16 A. L. R., 1273, 1285; 71 A. L. R., 1160, 1175.
 

 The problem of proximate causation is complicated by the fact that there was no contact between the train and either plaintiff or the Jerman automobile.
 

 However, from the facts, which we have indicated that the jury could have found, the jury could reasonably infer that the negligence of the railroad’s watchman in failing to warn Jerman did have some effect in causing Jerman to turn off the road and hit the plaintiff. Thus, the jury could reasonably infer that, if the watchman had warned, Jerman would have heeded the warning by slowing down and stopping before it became necessary for him to turn off the road in order to avoid colliding with the train. The jury could, therefore, have reasonably inferred that the railroad’s negligence was a contributing cause of the plaintiff’s injury because of the influence of the railroad’s negligence on the negligent conduct of Jerman, which caused plaintiff’s injuries.
 

 The problem still remains as to whether a jury could reasonably find that that causal relationship between the negligence of the railroad and the injuries of the plaintiff was a proximate one.
 

 
 *159
 
 It is well settled that a party may be held legally liable for the proximate consequences but not for the remote consequences of his negligence. Even if negligence of a party is a cause of injury to another, there can be no liability if the cause is a remote cause and not a proximate cause.
 
 McNees
 
 v.
 
 Cincinnati Street Ry. Co.,
 
 152 Ohio St., 269, 89 N. E. (2d), 138.
 

 Gedeon, Admr.,
 
 v.
 
 East Ohio Gas Co.,
 
 128 Ohio St., 335, 190 N. E., 924, does not require a decision in the instant case that the jury might reasonably find that the causal relationship between the negligence of the railroad and the injuries to the plaintiff was a proximate one. In the
 
 Gedeon case
 
 the defendant’s negligence immediately influenced another individual to take action immediately resulting in injury to a third person. But in the
 
 Gedeon
 
 case, the one so influenced to act was not, as was Jerman in the instant case, negligent both before and after the application of that influence.
 

 The problem remaining is whether the railroad should have anticipated negligence such as that of Jerman’s. We believe that it is not unreasonable to permit a jury to determine that the railroad should have anticipated negligence such as Jerman’s, the immediate effect of the railroad’s negligence thereon, and the immediate consequences to this plaintiff of their combination. It is common knowledge that, notwithstanding all the precautions which may be taken by a railroad to prevent grade-crossing accidents, a substantial number of motorists continue to be negligent in approaching railroad grade-crossings and then to take emergency action to avoid the consequences of their negligence. Furthermore, it is common knowledge that individuals such as plaintiff will be waiting at a bus stop, such as the one in the instant case, and apt to be immediately injured, at least when it is dark, by the emergency actions so taken.
 

 
 *160
 
 On this problem, our conclusion is that, if the jury-found those facts which we have indicated that the jury could have found, then there was a jury question as to whether the railroad’s negligence was a proximate cause of plaintiff’s injury. Without suggesting that this court would or should go to all of the extremes indicated, we believe that the following cases support this conclusion:
 
 Pennsylvania Co.
 
 v.
 
 Langendorf,
 
 48 Ohio St., 316, 28 N. E., 172;
 
 Mudrich
 
 v.
 
 Standard Oil Co.,
 
 153 Ohio St., 31, 90 N. E. (2d), 859;
 
 Wiles
 
 v.
 
 New York Central Rd. Co.,
 
 311 Mich., 540, 19 N. W. (2d), 90; and
 
 Mellon
 
 v.
 
 Lehigh Valley Rd. Co.,
 
 282 Pa., 39, 127 A., 444.
 

 The next question to be considered is whether'the trial court erred in refusing to grant the railroad’s motion for a new trial. Since this court is not required to weigh the evidence (Section 12223-31, General Code), any error in this respect, in order to justify reversal of the judgment of the Court of Appeals, should ordinarily relate to some matter other than the weight of the evidence.
 

 Among the grounds stated in the railroad company’s motion for a new trial were the following:
 

 “2.
 
 The verdict is contrary to law.
 

 “5. The court erred in submitting a form of verdict to the jury wherein they could find in favor of the defendant, Joseph Jerman.
 

 ‘‘6. The verdict evidenced passion and prejudice upon the part of the jury in that it returned a verdict against this defendant alone whereas the injuries to plaintiff were clearly the result at least in part, of negligent conduct on the part of the defendant, Joseph Jerman.”
 

 In her brief in this court, plaintiff admitted that Jerman was negligent as a matter of law and that such negligence was a proximate cause of the plaintiff’s injuries. For example, it is stated in one place in
 
 *161
 
 plaintiff’s brief: “Again, we say that Jerman’s negligence was a real, direct, and proximate cause of the tragedy. If it were an issue in the case we would urge this court to rule that his negligence was one of' the proximate causes as a matter of law.”
 

 The trial court did charge the jury that the defendant Jerman was negligent as a matter of law. However, the trial court left to the jury the question of whether that negligence was a proximate cause of the plaintiff’s injuries. Both parties to this appeal agree that there was no such question for the jury to decide, because Jerman’s negligence was such a proximate cause as a matter of law. It is not necessary, therefore, for this court to explain why it agrees with that proposition about which there is no controversy. Jerman’s negligence continued until the. moment of impact between his automobile and the plaintiff. There was no contact between the plaintiff and the railroad’s train, or between the defendant Jerman’s automobile and the railroad’s train. The defendant Jerman’s automobile did not even hit the railroad watchman’s shanty until after it had propelled the plaintiff through the air about 47 feet beyond the point of contact with her.
 

 By its verdict, the jury found “for the plaintiff against the New York Central Rd. Co. in the sum of $67,500 and for the defendant Joseph Jerman.”
 

 That finding for the defendant Jerman could not have been the result of a candid and reasonable consideration of the evidence adduced. Only by giving effect to testimony, the weakness of which was even recognized by plaintiff’s counsel in his argument to the jury, could a verdict against the railroad be possible. On the other hand, it is our opinion, and plaintiff has so conceded in her brief in this court, that from the evidence reasonable minds could only come to the conclusion that the defendant Jerman’s negli
 
 *162
 
 .gence was a proximate cause of the plaintiff’s injuries. Since the jury did not come to that conclusion, even though the court charged it that Jerman was negligent .as a matter of law, its verdict clearly indicates on its face that it is a verdict not rendered by reasonable minds. It would seem obvious that such verdict should not be permitted to stand.
 

 It follows that the judgment of the Court of Appeals must be reversed and the cause remanded to the Common Pleas Court for a new trial.
 

 Judgment reversed.
 

 Zimmerman, Stewart and Hart, JJ., concur.
 

 Weygandt, C. J., Middleton and Matthias, JJ., concur only in the judgment and in the syllabus except paragraph five.