Taft, J.
Defendant contends that there was no evidence of defendant’s negligence and that therefore the trial court erred in overruling the motion to direct a verdict for the defendant.
The only one in the automobile who had any recollection of what occurred immediately prior to the collision was the driver. Two were killed and the other five were seriously injured. The driver testified that he stopped about 20 feet from the tracks and looked and listened for a train, and that he did not hear any bell or any whistle (see Section 4955.32, Eevised Code) or the noise of a train and did not see any light (see Section 4963.25, Eevised Code). Since the train had 18 cars loaded with iron ore, four empty cars, a caboose, a steam locomotive and its tender and was only traveling between 25 and 35 miles per hour, it is difficult to comprehend how the driver could fail to hear it if he did effectively listen for a train. Cf. Cobb, Jr., Admr., v. Bushey, 152 Ohio St., 336, 89 N. E. (2d), 466. Also, his testi *532 mony is contradicted by that of the engineer and of the fireman that the bell was rung, the whistle was blown and the headlight was burning.
In arguing that the driver’s negative testimony, that he did not hear a bell or a whistle or see a light, should be given no weight as against the positive testimony that the bell was rung, the whistle was blown, and the headlight was on, defendant relies on Hicks, Admr., v. Baltimore & Ohio Rd. Co., 160 Ohio St., 307, 116 N. E. (2d), 307, and Clark v. Baltimore & O. R. Co., 196 F. (2d), 206, 211. However, in those cases, the witnesses whose testimony as to not hearing was given no weight were either not situated where they could hear or were not listening. Here, the driver testified that he was looking and listening for the train at a place where he should have been able to hear a bell or whistle of and see any headlight on an approaching train.
In Tanzi v. New York Central Rd. Co., 155 Ohio St., 149, 98 N. E. (2d), 39, 24 A. L. R. (2d), 1151, the syllabus reads in part:
“1. In passing upon a defendant’s motion for a directed verdict, the trial court is required to construe the evidence most strongly in plaintiff’s favor. (Hamden Lodge v. Ohio Fuel Gas Co., 127 Ohio St., 469, approved and followed.)
“2. Whether the testimony of a witness or of a party is false or mistaken is a question for the jury or other trier of the facts.”
If the jury believed the foregoing testimony of the driver as to looking and listening and not seeing or hearing, then it could reasonably have determined that defendant’s negligence was a proximate cause of the collision. Hence, without considering whether there was any other substantial evidence tending to prove defendant’s negligence, we conclude that there was no error in overruling the motion to direct a verdict for defendant.
The trial court charged the jury in part as follows:
“At the time of the accident * * * there was another section of the General Code which was in full force and effect at the time, applicable to railroads, General Code 8852 [Section 4955. 33, Revised Code], which reads as follows:
*533 “ ‘At all points where its road crosses a public road at a common grade, each company shall erect a sign, with large and distinct letters placed thereon, to give notice of the proximity of the railroad, and warn persons to be on the lookout for the locomotive. ’
‘ ‘ A company which neglects or refuses to comply with this provision shall be guilty of negligence per se, and you are instructed that if you find by a preponderance of the evidence that this statutory signal or provision was not complied with, the failure to so comply with said section of the G-eneral Code is negligence per se, that is, negligence as a matter of law, and if such negligence was a proximate cause of the accident and resulting damage to plaintiff, plaintiff could recover herein unless you further find that plaintiff, himself, was guilty of contributory negligence.”
Admittedly such a sign, herein referred to as the statutory cross-buck sign, had been erected and was in place at this crossing at the time of the collision. Although conceding that he offered no evidence tending to show that there was no such sign and made no such contention, plaintiff argues that one of his 13 specifications of negligence was broad enough to have permitted introduction of such evidence. However, even the words of that specification, relied upon by plaintiff in so arguing and reading, ‘ ‘ an automatic warning bell or other signaling device to warn of the approach of trains,” could not reasonably describe a mere statutory cross-buck sign. Hence, we have a situation where the trial court erroneously introduced into the charge instructions upon an issue not raised by the pleadings or the evidence. See Cincinnati Traction Co. v. Forrest, 73 Ohio St., 1, 75 N. E., 818; Cincinnati Traction Co. v. Stephens, Admr., 75 Ohio St., 171, 79 N. E., 235; and Toledo Railways & Light Co. v. Campbell, 79 Ohio St., 441, 87 N. E., 1142. This was not, as plaintiff suggests, merely a charge telling the jury what the statute required at this crossing. The jury was told in effect that it might find that defendant had failed to provide the statutory cross-buck sign, even though that sign was admittedly in place, and that such a failure would be negligence per se or negligence as a matter of law.
Admittedly, the Public Utilities Commission of Ohio had *534 not made any order requiring a “gate, automatic alarm bell or other mechanical device” or a “flagman” at this crossing. See Section 4907.47, Revised Code. However, the jury was told in effect that defendant would be under a duty to provide extra-statutory warnings if the jury believed such warnings to be “necessary for the reasonable safety of the traveling public,” or if it found “common prudence and ordinary care * * * for the safety of the public” required them, or if “the circumstances * * * and the location and general conditions” at this crossing reasonably required them. The jury was also told in effect that it might determine that this crossing possessed “such features of inherent danger” or was “so dangerous at” the time “as to require * * * measures” other than those specified by statute to protect highway users; and that it might determine that this crossing was “extremely hazardous.”
There have been indications in decisions by this court that a railroad may be under a duty to give warnings, other than those required by statute or by lawful orders of the Public Utilities Commission, when its trains pass over a highway grade crossing. However, although almost every railroad grade crossing involves a substantial risk of danger to those using the highway over such crossing, those decisions have definitely recognized that something well beyond the usual substantial risk of danger at a railroad grade crossing must exist before a jury can be permitted to determine that a railroad should have provided extrastatutory warnings at such crossing, where they have not been required by an order of the Public Utilities Commission.
Thus, in Railway Co. v. Schneider, 45 Ohio St., 678, 17 N. E., 321, paragraph one of the syllabus refers to a “crossing * * * exceptionally dangerous ’ ’; and in the opinion by Williams, J., at page 694, it is stated that “the duty * * * may be created by an exceptionally dangerous mode of crossing.” See also Weaver v. Columbus, Shawnee & Hocking Ry. Co., 76 Ohio St., 164, 176, 81 N. E., 180 (“a crossing particularly dangerous” and “unusual danger at or near a crossing”). The opinion by Zimmerman, J., in Reed, Admr., v. Erie Rd. Co., 134 Ohio St., 31, 34, 15 N. E. (2d), 637, mentions “features of unusual danger”; his opinion in Capelle v. Baltimore & Ohio Rd. Co., 136 *535 Ohio St., 203, 24 N. E. (2d), 822, mentions “special circumstances rendering the crossing peculiarly hazardous”; the opinion of Hart, J., in Woodworth, Admx., v. New York Central Rd. Co., 149 Ohio St., 543, 551, 80 N. E. (2d), 142, uses the words “especially dangerous”; the opinion of the writer in Tanzi v. New York Central Rd. Co., supra (155 Ohio St., 149), refers to a “crossing * * * unusually hazardous”; and the opinion by Zimmerman, J., in Biery, Admx., v. Pennsylvania Bd. Co., 156 Ohio St., 75, 99 N. E. (2d), 895, refers to the evidence there as indicating “a confusing and hazardous condition.”
Cases outside Ohio also frequently have recognized in similar general language that something well beyond a usual substantial risk of danger at a crossing must exist as a basis for requiring extrastatutory warnings at such crossing. See annotations, 16 A. L. E., 1273, 71 A. L. E., 1160, and 24 A. L. E. (2d), 1161.
However, it does not appear that we have heretofore been called upon to specify the rule of law applicable with respect to providing extrastatutory warnings at a railroad grade crossing, where no order of the Public Utilities Commission has provided for such warnings. Our conclusion is that there is ordinarily (but cf. paragraph three of the syllabus in Tanzi v. New York Central Rd. Co., supra [155 Ohio St., 149]) no duty on a railroad to provide extrastatutory warnings at a grade crossing, where no order of the Public Utilities Commission has provided for such warnings, if a driver in the exercise of ordinary care should be able to avoid colliding with a train that is being operated over the crossing in compliance with statutory requirements. Stated another way, a railroad is under no duty to provide extrastatutory warnings at a grade crossing, where not required to do so by any order of the Public Utilities Commission, if there is no substantial risk that a driver in the exercise of ordinary care may be unable to avoid colliding with a train that is being operated over the crossing in compliance with statutory requirements. In determining what, in addition to compliance with statutory and commission regulations, the exercise of ordinary care may require of a railroad at a grade crossing, the railroad should be able to assume *536 that those who drive over the railroad’s “right of way” at that crossing will do so in the exercise of ordinary care. See New York, Chicago & St. Louis lid. Co. v. Kistler, 66 Ohio St., 326, 64 N. E., 130. See also paragraph eight of the syllabus of Swoboda v. Brown, 129 Ohio St., 512, 196 N. E., 274. Cf. paragraph five of the syllabus of Tanzi v. New York Central Rd. Co., supra (155 Ohio St., 149), where the different problem involved was whether intervening negligence of another was foreseeable so as to prevent its breaking the chain of proximate causation between a railroad’s negligence and a resulting injury.
In the instant case we are of the opinion that reasonable minds could not conclude that there was a substantial risk that a driver in the exercise of ordinary care would be unable to avoid colliding with the train which hit the automobile in which plaintiff was riding if that train was being operated in compliance with statutory requirements. Hence, it was error for the trial court to permit the jury to consider whether defendant was under a duty to provide any extrastatutory warnings. The car in which plaintiff was riding had approached the crossing from the north and was struck by a westbound train. Admittedly, at all times after reaching a point within 20 feet of the rails, the driver of that car had a clear and unobstructed view to the east. If there was a light in front of the oncoming train or if its bell was ringing or its whistle blowing, that driver, if in the exercise of ordinary care, should have avoided the collision. Whether there was such a light or whether the bell was ringing or the whistle blowing were questions for the jury, but there was no question for the jury as to whether the railroad should have provided extrastatutory warnings at this crossing.
Complaint is made by defendant with respect to the admission of evidence relative to the existence of correspondence indicating efforts to have flasher lights installed at this crossing.
The question whether an order of the Public Utilities Commission, requiring extrastatutory warnings at a railroad grade crossing, is reasonable and lawful is not the same as the question whether such warnings are required in the absence of such an order. The General Assembly has vested in the Public Utilities Commission a large measure of discretion in deter *537 mining -whether snch warnings shall be required. Section 4907.47, Revised Code. Recent decisions of this court have recognized the estent of the discretion so vested in the commission. New York Central Rd. Co. v. Public Utilities Commission, 163 Ohio St., 250, 126 N. E. (2d), 320; New York Central Rd. Co. v. Public Utilities Commission, 163 Ohio St., 482, 127 N. E. (2d), 208; New York Central Rd. Co. v. Public Utilities Commission, 164 Ohio St., 289, 130 N. E. (2d), 365. Hence, we fail to see any relevancy in the evidence admitted with respect to the existence of correspondence indicating efforts to have flasher lights installed at this crossing. See Woodworth, Admx., v. New York Central Rd. Co., supra (149 Ohio St., 543).
Defendant also complains with respect to admission of evidence as to the nature and extent of injuries received by other passengers in the automobile. We agree that it was proper, in order to account for their absence as witnesses, for plaintiff to show that two of those in the car had died prior to the trial. As to the others in the car who were unable to recall the happening of the accident because of their injuries therein, it was undoubtedly proper for plaintiff to have them so testify. Furthermore, defendant on cross-examination might well have explored the reasons for their inabilities to so recall, even to the extent of questioning them with respect to the nature and extent of their injuries. Cf. Fox v. Industrial Commission, 162 Ohio St., 569, 585 et seq., 125 N. E. (2d), 1. However, it is difficult to see any justification for plaintiff offering on direct examination as much evidence as was offered with respect to the nature and extent of the injuries to those in the automobile other than plaintiff. The nature and extent of their injuries was not an issue in the case and evidence with respect thereto might well have a tendency to inflame the emotions of the jury.
Complaint is also made with respect to evidence as to the condition of the headlights on defendant’s locomotives passing over this crossing on occasions from three to seven years before this accident. Such evidence would hardly tend to prove the condition of the headlight on the train involved in this collision. Also, evidence of negligent operation on other occasions would not ordinarily be admissible to prove negligence on this occasion. See Boles v. Montgomery Ward & Co., 153 Ohio St., *538 381, 386, 92 N. E. (2d), 9. If it were, the principal issues in a trial of this kind might well be obscured by collateral controversies as to whether prior negligent operations did or did not occur. See 20 American Jurisprudence, 284, Section 306.
■ Because of the foregoing errors involved in the trial of this action, the judgment of the Court of Appeals is reversed and the cause is remanded to the trial court for a new trial.

Judgment reversed.

WeygaNdt, C. J., Zimmebmah, Stewart, Matthias and Herbert, JJ., concur.