OPINION
{¶ 1} Appellant, George Kafantaris, appeals from a final judgment of the Trumbull County Court of Common Pleas granting appellee, Karen Longstreth, a new trial and awarding her attorney's fees and expenses. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On July 20, 1999, appellee filed a complaint against appellant in which she asserted the following causes of action: (1) sexual harassment; (2) intentional infliction of emotional distress; and (3) battery. According to the complaint, appellant subjected appellee to "a pervasive pattern of unwelcome sexual conduct and harassment, including but not limited to sexually suggestive remarks and invitations, unwelcome sexual advances and forcible rape[,]" during appellee's employment with appellant.
 {¶ 3} The matter proceeded to a jury trial beginning on April 30, 2001. The first person to take the stand was Evalyn Naylor ("Naylor"), a former employee of appellant's. Naylor testified that one day at work, she and appellee had a conversation during which appellee told Naylor that appellant had forced her to have sexual intercourse, and that he had made inappropriate remarks and requests on several occasions. On cross-examination, Naylor told the jury that, although she had not shared this information with appellee's attorney, she and appellant had a sexual relationship during the time she worked for him, and that when she ended the affair, appellant forced himself on her.
 {¶ 4} Next to testify was Lisette Lauer ("Lauer"), another former employee of appellant. She testified that during her interview for the job, appellant asked her "to stand up and walk around so that he could look [her] up and down." Lauer also claimed that on her first day, appellant asked her to go to the store with him to get his children some candy. When they returned to the office, appellant told Lauer that "he couldn't go in right then because just [her] going with him to the store and riding with him had given him a hard on and he didn't want his wife to see it."
 {¶ 5} Lauer further testified that appellant instructed her "that when [she] licked envelopes that [she] should lick them real slow and look up at him while [she] was licking them." There was also an occasion in 1994 when appellant opened the back door to the office with a towel wrapped around him. According to Lauer's testimony, after she walked inside the office, appellant pushed her up against some kitchen cabinets and hugged her. When he did this, the towel around appellant's waist fell to the floor, revealing that he was only wearing underpants.
 {¶ 6} Appellant also presented testimony from Shawn Michael Weiss ("Weiss"), an associate technical director with the Forensic Identity Department of the Laboratory Corporation of America. Weiss testified appellant's semen was present on a skirt that appellee had presented for testing. This was the same skirt appellee was wearing on the day she claimed appellant raped her.
 {¶ 7} As for appellee, she testified that appellant's conduct on multiple occasions, both verbal and physical, had made her feel uncomfortable. For example, when discussing her divorce, appellant asked appellee about her sex life. Specifically, appellant asked her "`Do you still make your husband hard? Does he still make you wet?'" On another occasion, appellant was apparently having a bad day. As a result, appellee told him that "`What you need to do is come sit down, eat your sandwich. I'll go ahead and run these bankruptcies to Youngstown.'" According to appellee, appellant responded by taking her hand and telling her "`No. What I need is a blow job." Appellee also testified that on October 20, 1998, appellant forced her to have sexual intercourse in her apartment.
 {¶ 8} Appellant was the final witness called by appellee. Although he had up this point denied ever having a sexual relationship with any of his employees, faced with Naylor's earlier testimony, appellant finally conceded that he did have such a relationship with her. When appellee's attorney asked appellant whether he had had a similar relationship with another employee he told the jury "I don't think so, no." Shortly thereafter, appellant changed his testimony and testified that he and appellee did have sex on October 20, 1998. However, even though he admitted to having sex with appellee, appellant claimed that it was consensual.
 {¶ 9} After the jury returned a verdict in appellant's favor, appellee filed a motion with the trial court for a new trial. In her motion, appellee argued that appellant's last minute change of testimony prevented her from receiving a fair trial. Appellee submitted that appellant had repeatedly denied having a sexual relationship with any employee; accordingly, her attorney was unaware that appellant would testy that he and appellee had engaged in consensual sex. Appellee also filed a motion for attorney's fees and expenses pursuant to Civ.R. 11 and R.C. 2323.51. In support, appellee maintained that appellant's frivolous conduct had compelled her to spend a significant amount of time and money to establish that a sexual act indeed had occurred. Appellant filed a brief in opposition to both motions.
 {¶ 10} The trial court considered the parties' respective arguments, and in two separate entries, granted both of appellee's motions. In granting appellee a new trial, the trial court found that the jury's verdict was not sustained by the weight of the evidence because there was "a high probability, if not a certainty, that the jury's verdict was based on the false testimony of [appellant], specifically that testimony that he and [appellee] engaged in consensual sexual intercourse, or, as he termed it, `made love.'" Furthermore, the trial court determined that appellant's change in testimony prevented appellee from receiving a fair trial and was a complete surprise that appellee could not have prudently guarded against. As for the issue of attorney's fees and expenses, the trial court ordered appellant to pay appellee $13,433.92.
 {¶ 11} From this decision, appellant filed a timely notice of appeal with this court. He now asserts the following assignments of error for our consideration:
 {¶ 12} "[1.] The trial court abused its discretion in granting a new trial under Ohio Civil Rule 59(A)(6) on the ground that the judgment was not sustained by the weight of the evidence.
 {¶ 13} "[2.] The trial court erred in granting a new trial in the absence of circumstances establishing that [the] denial of a new trial would be inconsistence [sic] with substantial justice and would affect the substantial rights of the parties, and in the absence of circumstances establishing that the jury would have reached a different verdict had appellant not given trial testimony contradicted [sic] his deposition.
 {¶ 14} "[3.] Even if it were shown that appellee was prejudiced by the change in testimony by appellant, the trial court abused its discretion in finding that a new trial should be granted on the ground of irregularity in the proceedings of the jury or prevailing party by which an aggrieved party was prevented from having a fair trial.
 {¶ 15} "[4.] The trial court abused its discretion in granting a new trial on the ground of misconduct of the prevailing party.
 {¶ 16} "[5.] The trial court erred in granting a new trial on the ground of surprise since appellee failed to take any step to remedy or overcome the alleged surprise.
 {¶ 17} "[6.] The trial court erred in granting appellee's motion for attorney fees and expenses."
 {¶ 18} Under his first assignment of error, appellant argues that the trial court erred in granting appellee's motion for new trial because there was competent, credible evidence supporting the jury's verdict in his favor. Appellant maintains that a contradiction between deposition and trial testimony does not preclude a jury from finding the trial testimony of a particular witness to be credible.
 {¶ 19} Civ.R. 59(A) provides:
 {¶ 20} "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 21} "***
 {¶ 22} "(6) The judgment is not sustained by the weight of the evidence ***[.]"
 {¶ 23} When ruling on a motion for new trial asserting that the jury's verdict was not sustained by the weight of the evidence, the trial court must review the evidence presented at trial and pass upon the credibility of the witnesses. Rohde v. Farmer (1970), 23 Ohio St.2d 82, paragraph three of the syllabus. However, although the jury has substantially unlimited power to assess issues of weight and credibility, the trial court's consideration of the same matters is more restricted as the trial court must determine whether a manifest injustice has been done and whether, as a result, the jury's verdict is against the manifest weight of the evidence. Padden v. Herron (Dec. 24, 1998), 11th Dist. No. 97-L-223, 1998 Ohio App. LEXIS 6296, at 5. In other words, the trial court "`does not undertake to judge the credibility of the evidence, but only to judge whether it has the semblance of credibility.'" Kitchen v. Muenster (July 13, 2001), 11th Dist. No. 2000-L-051, 2001 Ohio App. LEXIS 3191, at 9, quoting Verbon v. Pennese
(1982), 7 Ohio App.3d 182, 183.
 {¶ 24} The decision to order a new trial premised on the weight of the evidence is committed to the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion.Mannion v. Sandel, 91 Ohio St.3d 318, 321, 2001-Ohio-47. An abuse of discretion connotes more than a mere error of law; rather, it implies that the court's attitude was unreasonable, arbitrary, or capricious.Malone v. Courtyard by Marriott L.P., 74 Ohio St.3d 440, 448,1996-Ohio-311.
 {¶ 25} When the trial court's decision on a motion for new trial involves questions of fact, as is the case here, this court must "view the evidence favorably to the trial court's action rather than to the original jury's verdict." Rohde at 94. The "deference to a trial court's grant of a new trial stems in part from the recognition that the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the `surrounding circumstances and atmosphere of the trial.'" Malone at 448, quoting Rohde at 94. Simply put, the trial court is in the best position to ultimately pass on the correctness of a jury's verdict. Antal v. Olde Worlde Products, Inc. (1984),9 Ohio St.3d 144, 146.
 {¶ 26} Moreover, a trial court may not set aside a verdict based upon a difference of opinion with the jury as to the weight of the evidence. Rohde at 92. Instead, when a trial court finds a verdict to be manifestly against the weight of the evidence, the court must set aside the judgment. Id.
 {¶ 27} Here, the trial court determined that the jury's verdict was counter to the weight of the evidence because the verdict was based on false testimony. In particular, the trial court found that it was only after appellant had been confronted with the testimony of appellee and her witnesses that he decided to admit to the sexual contact but, at the same time, claim that it was consensual.
 {¶ 28} In Tanzi v. New York Central RR. Co. (1951),155 Ohio St. 149, 153, the Supreme Court of Ohio held the following:
 {¶ 29} "*** A witness is required to take an oath before giving his testimony and is subject to prosecution for perjury if he gives false testimony. Furthermore, juries have the duty to detect and disregard false testimony. Finally, in the event that a jury does not detect anddisregard false testimony, the trial court and the Court of Appeals eachhas a clear duty to grant a new trial on the weight of the evidence whereit appears probable that a verdict is based upon false testimony." (Emphasis added.)[1]
 {¶ 30} Accordingly, if a trial court determines that a witness gave false testimony, the court is required to order a new trial if the jury's verdict is based on that testimony. Id. See, also,Markan v. Sawchyn (1987), 36 Ohio App.3d 136, 138.
 {¶ 31} Having carefully reviewed the record, we conclude that the trial court's decision to grant a new trial based on appellant's false testimony is well supported. From the time he filed an answer until he testified at trial, appellant steadfastly denied ever having a sexual relationship with any employee. Appellant admittedly lied during his deposition when he testified that nothing sexual occurred between him and appellee on October 20, 1998. Moreover, appellant repeatedly questioned appellee's DNA evidence, suggesting that she somehow acquired a sample of his semen and then planted it on her skirt.
 {¶ 32} It was only after being confronted with the damning evidence during trial that appellant, who represented himself throughout the proceedings, decided to change his story and claim that there had been consensual sex. In fact, when he took the stand for cross-examination, appellant again denied having sex with appellee:
 {¶ 33} "Q. Now, have you ever kissed an employee?
 {¶ 34} "A. Evalyn.
 {¶ 35} "Q. Evalyn. And again during your deposition you denied doing that; correct?
 {¶ 36} "A. Yes, I did.
 {¶ 37} "Q. And did you have intercourse with Evalyn?
 {¶ 38} "A. Yes, I did.
 {¶ 39} "Q. Any other employee?
 {¶ 40} "A. Evalyn.
 {¶ 41} "Q. Evalyn. Any other employee?
 {¶ 42} "A. I don't think, no.
 {¶ 43} "Q. You're not sure?
 {¶ 44} "A. No. I don't think, no.
 {¶ 45} "Q. Might be, though?
 {¶ 46} "A. I was dating Evalyn. No. No.
 {¶ 47} "Q. Sounds like you're guessing. Are you sure you have not had any —
 {¶ 48} "A. Yeah, I'm sure.
 {¶ 49} "Q. You're now sure?
 {¶ 50} "A. Yeah."
 {¶ 51} After continued questioning, appellant finally testified that he had sex with appellee:
 {¶ 52} "Q. Now, if I understand your previous statement about family, are you telling the jury that the reason you lied [during your deposition] was to spare your family; is that correct?
 {¶ 53} "A. You can look at it — well, yeah, the family issues, the family matters, yeah.
 {¶ 54} "Q. It didn't have anything to do with the —
 {¶ 55} "A. It's not something that you're proud of.
 {¶ 56} "Q. I understand that. But are you telling this jury it didn't have anything to do with the fact that [appellee] has sued you ***?
 {¶ 57} "A. [Appellee] has sued me for rape over a consensual act.
 {¶ 58} "Q. Oh!
 {¶ 59} "A. Yeah."
 {¶ 60} Considering appellant's conduct throughout the entire proceedings, we conclude that the trial court was justified in finding that appellant's testimony was not credible. As we noted earlier, when considering a motion for new trial based on the jury's verdict not being sustained by the weight of the evidence, the trial court is necessarily required to consider the credibility of the witnesses. And although the trial court's ability to assess credibility is somewhat restricted, a reasonable person confronted by the set of facts before the trial court could validly conclude that the jury's verdict was against the manifest weight of the evidence.
 {¶ 61} This is not a case in which a witness lied about a particular fact in an effort to distort the truth. Rather, we are presented with a situation where a party, who is also a licensed attorney, engaged in a pattern of conduct purposely designed to deceive the plaintiff, the trial court, and the jury. Moreover, there is no question that appellant's change in testimony influenced the jury's verdict as before reaching its decision, the juror's submitted the following question to the trial court: "Do we render a verdict on all three claims as a whole, or can we split them up? Example. Find for sexual harassment and not for battery."
 {¶ 62} Accordingly, because the trial court set forth facts that constituted a reasonable basis for its decision, we find no abuse of discretion on the part of the trial court in its determination that the verdict was not supported by the weight of the evidence. Appellant's first assignment of error has no merit.
 {¶ 63} In his second assignment of error, appellant argues that the trial court erred in granting a new trial because the fact that he changed his testimony was not prejudicial to appellee's case. Appellant maintains that under Civ.R. 61, appellee had to show that the outcome of the trial would have been different if appellant had testified consistent with his deposition. This is simply not true.
 {¶ 64} Civ.R. 61 provides that "[n]o error in either the admission or the exclusion of evidence *** is ground for granting a new trial *** unless refusal to take such action appears to the court inconsistent with substantial justice." Civ.R. 61 and Civ.R. 59 are separate and distinct procedural rules and must be considered individually. At no time did appellee claim that the improper admission of evidence was prejudicial to her case. Rather, appellee filed her motion for new trial on the ground that appellant had lied during the trial, and that the jury's verdict was based on his false testimony. As a result, the trial court had to consider appellee's arguments under Civ.R. 59 as opposed to Civ.R. 61. Appellant's second assignment of error is not well taken.
 {¶ 65} Under his third, fourth, and fifth assignments of error, appellant claims that the trial court abused its discretion in granting a new trial because there were no irregularities in the proceedings, there is nothing in the record to support a finding that appellant committed any misconduct, and there is nothing to indicate that appellee took steps to overcome the alleged surprise at appellant's change in testimony. Having already concluded that the trial court's decision to order a new trial because the jury's verdict was counter to the weight of the evidence was not an abuse of discretion, it is unnecessary to address the other theories set out in appellee's motion to the court. Malone at 449.
 {¶ 66} That being said, although this court is not specifically addressing appellant's third, fourth, and fifth assignments of error, we do note that asking for and receiving a continuance would not have erased the damage created by appellant's sudden change of heart. For approximately twenty-one months, appellant adamantly denied having any sexual contact with appellee. This lie not only impacted the trial, but it also influenced the manner in which appellee pursued her case in such areas as discovery, trial preparation, and presentation of the case to the jury.
 {¶ 67} In assignment of error six, appellant maintains that the trial court erred by awarding appellee attorney's fees and expenses as there is nothing in the record to support a finding that he violated either Civ.R. 11 or R.C. 2323.51. We disagree.
 {¶ 68} Civ.R. 11 provides in part:
 {¶ 69} "Every pleading, motion, or other document of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address, attorney registration number, telephone number, telefax number, if any, and business e-mail address, if any, shall be stated. A party who is not represented by an attorney shall sign the pleading, motion, or other document and state the party's address. *** The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule. Similar action may be taken if scandalous or indecent matter is inserted."
 {¶ 70} Similarly, R.C. 2323.51 provides that sanctions may be imposed against either counsel or party for frivolous conduct. "Conduct" includes "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, or the taking of any other action in connection with a civil action[.] " R.C.2323.51(A)(1)(a). R.C. 2323.51(A)(2)(a) defines "frivolous conduct" in part as:
 {¶ 71} "(a) Conduct of an inmate or other party to a civil action, of an inmate who has filed an appeal of the type described in division (A)(1)(b) of this section, or of the inmate's or other party's counsel of record that satisfies either of the following:
 {¶ 72} "(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal.
 {¶ 73} "(ii) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law."
 {¶ 74} The imposition of sanctions pursuant to Civ.R. 11 or R.C.2323.51 is left to the sound discretion of the trial court. ClevelandConst., Inc. v. Carr (Dec. 18, 1998), 11th Dist. No. 98-A-0002, 1998 WL 964538, at 4. Accordingly, the trial court's decision to impose sanctions will only be reversed if the court abused that discretion. Id.
 {¶ 75} Throughout these proceedings, appellant made a conscious and sustained effort to hide the fact he had a sexual relationship with appellee. For example, on March 13, 2001, appellant, acting pro se, filed a motion for a continuance. As support, appellant attached an affidavit in which he stated the following:
 {¶ 76} "In defense of this claim, I have consistently denied any alleged sexual conduct involving the plaintiff. I have maintained that ifthere were semen on this garment, it was not there as a result of asexual encounter between me and the plaintiff. In order to adequately present my defense, it has been necessary for me to retain experts to establish: (a) whether any semen stain on the garment was caused by my semen, and/or (b) that if any such stain was caused by my semen, that substance was transferred to the garment from another source." (Emphasis added.)
 {¶ 77} Appellant defends the previous statements by arguing that it was accurate as he had up to that point denied any sexual conduct involving appellee. Although appellant is correct that he had denied any such conduct, his denial was clearly contrived. Even under appellant's version of the facts, he was obviously aware that his statements were untrue at the time he made them. Thus, the trial court did not abuse its discretion in imposing sanctions under Civ.R. 11.
 {¶ 78} Furthermore, the trial court did not abuse its discretion in imposing sanctions under R.C. 2323.51. As we noted earlier, frivolous conduct includes the assertion of a defense or other position that "obviously serves merely to harass or maliciously injure another party to the civil action ***." Appellant's continued denials forced appellee to rely on DNA evidence to support her claims. Moreover, in an attempt to discredit the results, appellant went so far as to suggest appellee planted appellant's semen on her skirt in an effort to prove her case. Such conduct is inexcusable and constituted a deliberate effort to conceal the truth.
 {¶ 79} Appellant justifies his actions by claiming that "[e]veryday human experience teaches that a man with a faithful and trusting wife, and sons whose trust and respect he feared to lose, would be strongly motivated to deny infidelity to the wife and mother as long as admission of that infidelity might be successfully avoided." Whether or not that may be true, the fact that a licensed attorney would intentionally lie to cover up what he claims was a consensual encounter cannot be condoned. Appellant's sixth assignment of error has no merit.
 {¶ 80} Based on the foregoing analysis, appellant's six assignments of error are not well-taken. The judgment of the trial court, therefore, is affirmed.
WILLIAM M. O'NEILL, P.J., and JUDITH A. CHRISTLEY, J., concur.
[1] Appellant correctly notes that the above quoted portion of Tanzi is not located in the syllabus of the opinion. However, although the syllabus of a Supreme Court opinion formerly provided the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication, S.Ct.R.Rep.Op. 1(B), the Supreme Court has recently revised this rule which now provides that "[t]he law stated in a Supreme Court opinion is contained within its syllabus (if one is provided), and its text, including footnotes." S.Ct.R.Rep.Op. 1(B)(1).