**MEYER et al., Appellants,**

v.

**SRIVASTAVA et al., Appellees.**

[Cite as *Meyer v. Srivastava* (2001), 141 Ohio App.3d 662.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18256.

Decided March 30, 2001.

*Michael L. Tucker; Douglas A. Hess; Robert M. O'Neal;* and *Steven K. Dankof,* for plaintiffs-appellants.

*Neil F. Freund; Susan Blasik–Miller,* for defendants-appellees.

GRADY, Judge.

This is an appeal from an order denying plaintiffs-appellants' motion for new trial.

Plaintiffs, Ronald Martin, James Muller, Aaron Anderson, and Todd Meyer, were injured in an explosion and fire that occurred on June 28, 1994, at Apartment 3D, 1901 Hazel Avenue, Kettering, Ohio. Martin resided there. The other plaintiffs were guests in the apartment at the time.

The explosion occurred when natural gas escaped from an uncapped gas line in the utility room of the apartment and ignited. The uncapped line was a "bootleg" line connected to a gas water heater that ran to a nearby open location where someone had once installed and then removed another appliance, perhaps a gas clothes dryer, that the line had served. Gas escaped from the uncapped end of the line when a pitcock on the line opened, possibly due to vibrations from operation of a washer or an electric clothes dryer that Martin and his roommate had recently installed.

Plaintiffs commenced this action against the owners of the apartment building, with whom they eventually settled. Plaintiffs joined Dayton Power and Light Co. ("DP & L") as a party defendant. Plaintiffs' claims for relief against DP & L were eventually tried to a jury, which returned a verdict for DP & L.

DP & L is a public utility which at the time provided natural gas service to the building where the explosion occurred. It is conceded that DP & L ordinarily is not liable for defects inside the building to which its service lines are located, such as the uncapped bootleg gas line in this instance. However, if DP & L saw or reasonably should have discovered the line and the defect in it upon inspection, DP & L had a duty to repair the defect. *Donoughe v. E. Ohio Gas Co.* (1950), 89 Ohio App. 411, 46 O.O. 244, 102 N.E.2d 881; *Hamden Lodge No. 517 I.O.O.F. v. Ohio Fuel Gas Co.* (1934), 127 Ohio St. 469, 189 N.E. 246.

Evidence was introduced that two DP & L service technicians had been in the utility room where the explosion occurred prior to June 28, 1994, the date it took place.

On April 23, 1993, William Wright, a DP & L serviceman, entered the apartment to turn off the gas appliances in order to change the outside gas meter. Wright testified that when he is in an apartment it is his responsibility to look for open lines and to cap the open lines that he finds. Wright said that he encounters open lines quite often, and that every serviceman carries caps in his truck for this type of circumstance. If he encounters something unsafe that cannot be remedied by simply capping the line, he is required to tag the line or, if necessary, to turn off gas service to the residence. After replacing a meter, DP & L's procedure required Wright to go back inside the residence to relight any gas appliances.

On June 4, 1993, Thomas Rowe, a DP & L serviceman, made a service call to apartment 3D to reconnect gas service under the landlord's name. Rowe testified that the procedure for reconnecting gas service is much the same as the procedure for a meter change. First, the serviceman enters the residence and shuts off the flow of gas to each gas appliance. Then the serviceman turns on gas service at the meter and does a spot check to make sure that the gas line is not leaking while the appliances are turned off. Once he determines that the gas lines are not leaking, the serviceman re-enters the residence, turns on the flow of gas to each gas appliance, and then relights the appliances. Rowe testified that it is a serviceman's responsibility to cap or plug an open line, and that any unsafe condition must be tagged.

Neither DP & L service technician specifically recalled being in the apartment, but each insisted that he would have securely capped the bootleg line had he seen it. Neither disputed records that demonstrated when and why they were there.

Plaintiffs introduced evidence that the "bootleg" gas line involved in the 1994 explosion and fire was in place in the apartment in 1991, and perhaps before that. Several former tenants testified that they saw it during those years. One testified that the landlord's wife had pointed out the line to her, indicating that the line could be connected to a gas clothes dryer. Another testified that he brought a gas dryer to use but abandoned the idea when the dryer malfunctioned. He denied connecting the dryer to the available bootleg line, however. The two residents of the apartment at the time of the explosion had purchased and installed a washer and electric clothes dryer about one month before. It is suggested that vibrations from operation of the washer and dryer had caused the pitcock on the bootleg line to open, allowing gas to escape from the uncapped end.

DP & L introduced two photographs purporting to depict the water heater that was in the apartment and to which the uncapped bootleg gas line was attached when the explosion occurred. According to DP & L's witness, serial numbers on the heater demonstrated that it was manufactured in June 1993. That evidence supports an inference that neither the heater nor the bootleg line attached to it was in the apartment on the earlier occasions in 1993 when DP & L's technicians were there. The inference bolstered DP & L's defense that it had breached no duty of care it owed the plaintiffs because, in that event, no uncapped gas line was in place for its technicians either to discover or cap when they were in the apartment.

The jury returned a verdict for DP & L after a two and one-half week trial, finding also by interrogatory that DP & L had acted with reasonable prudence under the circumstances.

Subsequently, plaintiffs discovered that the particular water heater depicted in the photographs that DP & L introduced was not the heater that was in the apartment where the explosion occurred. It was, instead, from an adjoining apartment. Plaintiffs then moved for a new trial pursuant to Civ.R. 59(A)(1), citing the erroneous identification of what the photographs depicted as an "irregularity" in the proceedings which prevented them from having a fair trial.

The trial court denied the plaintiffs' motion for new trial. The court reasoned that the jury, even had it believed that the water heater was installed only after DP & L's technicians were in the apartment, might nevertheless reasonably conclude that the uncapped bootleg gas line was in place prior to that time. Plaintiffs filed a timely notice of appeal.

## ASSIGNMENT OF ERROR

"The lower court's decision overruling plaintiffs' motion, filed pursuant to Ohio R. Civ.P. 59, requesting a new trial constitutes an abuse of discretion

because the lower court, in an unreasonable, arbitrary fashion, concluded that the surprise, dramatic introduction of false evidence on a central trial issue did not deprive plaintiffs of a substantial—and therefore a fair trial—because the jury could have found the defendant was not negligent even if the false testimony had not been introduced."

Civ.R. 59 governs the matter of new trials. The purpose of Civ.R. 59 is to give trial judges the power to prevent a miscarriage of justice. *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 659 N.E.2d 1242. It allows the judge to order a "rehearing of the questions in the trial court under circumstances more favorable to [their] deliberate consideration than those attending the first investigation." *Rippel v. Rippel* (1974), 69 O.O.2d 503, 504, 328 N.E.2d 816, 818.

A motion for new trial invokes the trial court's sound discretion. An order granting or denying a motion for new trial should not be reversed on appeal absent an abuse of discretion. *Taylor v. Ross* (1948), 150 Ohio St. 448, 38 O.O. 314, 83 N.E.2d 222. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

Civ.R. 59(A)(1) provides that "[a] new trial may be granted * * * on all or part of the issues * * * upon * * * grounds (of an) [i]rregularity in the proceedings of the court, jury, * * * or prevailing party * * * by which an aggrieved party was prevented from having a fair trial." Such an irregularity is any matter "as constitutes a departure from the due, orderly and established mode of proceeding therein, where a party, with no fault on his part, has been deprived of some right or benefit otherwise available to him." *Sherwin–Williams Co. v. Globe Rutgers Fire Ins. Co.* (1912), 20 Ohio C.C. (N.S.) 151, 154, 31 Ohio C.D. 248, 1912 WL 768.

Plaintiffs-appellants argue that the misidentification of the water heater depicted in the two photographs introduced by DP & L constitute an *irregularity* in the proceedings chargeable to DP & L as the prevailing party that demonstrates proper grounds for a new trial, and that the trial court abused its discretion when it denied plaintiffs-appellants' request for that relief. We agree.

A photograph may be introduced to prove its contents. More often, it is introduced to illustrate the testimony of a witness with firsthand knowledge of what the photograph purports to depict. That was not the case here. The authenticity of the photographs of the water heater were apparently stipulated. DP & L's witness, who lacked any firsthand knowledge of what the photographs depicted, then testified concerning the contents of the photographs, the serial numbers shown on the water heater depicted. His testimony that the water

heater was not yet manufactured when DP & L's service technicians were in the apartment supported an inference that neither the water heater nor the bootleg gas line attached to it could have been in the apartment when DP & L's service technicians were there. From that, the jury could reasonably conclude that, when they were in the apartment, DP & L's service technicians had no opportunity to discover the bootleg gas line, and thus that DP & L breached no duty it owed the plaintiffs by failing to cap the line. Indeed, DP & L in its closing argument urged the jury to draw that very inference, and to conclude that no breach of its duty was shown.

A factual inference is a permissible deduction which the jury may make without express direction of the law to that effect, employing those deductions and rational conclusions which result from application of the ordinary principles of logic. *Shafer v. Natl. Life & Acc. Ins. Co.* (1950), 88 Ohio App. 295, 45 O.O. 51, 98 N.E.2d 319. Inferences are the function and purpose of circumstantial evidence, which permits proof of one thing by evidence of another that, according to the common experience of mankind, is rationally connected to its existence.

The photographs and related evidence concerning the date the water heater depicted in the photographs was manufactured created a negative inference that the DP & L service technicians could not have discovered the defect in the bootleg gas line that was attached to the heater because neither was in place when the technicians were in the apartment. That inference preponderates against the plaintiffs-appellants' claim for relief because no inspection by DP & L's service technicians could have revealed a line that was not there.

The trial court reasoned that the jury, even had it believed DP & L's evidence concerning the water heater, nevertheless might also conclude that the gas line was in place before the heater depicted in the photographs was installed, perhaps attached to another heater that was replaced when the new heater was installed. That is improbable, inasmuch as it is undisputed that the line was serving no purpose when the explosion occurred. It is most unlikely that its installer would have transferred it from another heater where it had likewise served no purpose.

Plaintiffs-appellants had a significant burden of proof in this case. Their claim for relief required them to prove, by a preponderance of the evidence, that DP & L's service technicians should have discovered the uncapped line upon inspection. That the gas line was in place when the technicians were in the apartment is a factual predicate necessary to that burden of proof. Evidence that the line was not then in place wholly trumps the plaintiffs' claim, if that evidence is believed.

There is no reason the jury would reject the evidence DP & L offered concerning the age and installation of the heater shown in the photographs.

Adoption of the inference which that evidence supports concerning the absence of the bootleg gas line when DP & L's service technicians were in the apartment prevents a verdict for the plaintiffs. The jury was not required to return a verdict for the plaintiffs. However, the jury's fair consideration of the evidence on that point was fatally undermined by the false evidence that DP & L had offered concerning the photographs and what they depicted.

Plaintiffs might have avoided the prejudice which flowed from introduction of the photographs by insisting on the necessary foundational evidence instead of stipulating to their authenticity. Ordinarily, their failure to do that might constitute waiver of the prejudice that resulted. However, the better policy is to regard the mistake as an irregularity chargeable to DP & L, which misrepresented what the photographs depicted. That irregularity deprived plaintiffs of a fair trial, which is grounds for the relief that Civ.R. 59(A)(1) provides. Therefore, we conclude that the trial court abused its discretion when it denied plaintiffs' motion for a new trial.

The assignment of error is sustained. The order from which the appeal is taken is reversed. The cause will be returned to the trial court on our mandate to grant plaintiff-appellants' motion for a new trial.

*Judgment reversed*
*and cause remanded.*

BROGAN and FAIN, JJ., concur.