[Cite as *Gagliano v. Kaouk*, 2012-Ohio-1047.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96914**

---

# DANIEL GAGLIANO, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# JIHAD KAOUK, M.D., ET AL.

DEFENDANTS-APPELLEES

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-707473

**BEFORE:** Cooney, J., Stewart, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** March 15, 2012

**ATTORNEY FOR APPELLANTS**

William C.H. Ramage
4822 Market Street, Suite 220
Youngstown, OH 44512


**ATTORNEYS FOR APPELLEES**

George M. Moscarino
Seamus J. McMahon
Moscarino & Treu, L.L.P.
The Hanna Building, Suite 630
1422 Euclid Avenue
Cleveland, OH 44115

COLLEEN CONWAY COONEY, J.:

{¶1} Plaintiffs-appellants, Daniel ("Daniel") and Concetta ("Concetta") Gagliano (collectively "the Gaglianos"), appeal the trial court's denial of their motion for new trial and the exclusion of certain witnesses during the trial of their malpractice claim against defendants-appellees, Dr. Jihad A. Kaouk ("Dr. Kaouk") and the Cleveland Clinic Foundation ("CCF"). We find no merit to the appeal and affirm.

{¶2} In their complaint, the Gaglianos alleged that Dr. Kaouk, personally, and as an agent of CCF, was negligent in: (1) failing to take diagnostic procedures to determine the risks of the robotic procedure he used to remove Daniel's prostate gland; (2) failing to advise him of the risks posed by the procedure; and (3) failing to timely diagnose an infection resulting from the surgery. They further alleged that, as a result of the negligence, Daniel developed a post-operative infection that required additional surgeries, and has suffered significant deterioration of his general health. Concetta alleged a loss of consortium claim. The case proceeded to a jury trial where the following evidence was presented.

{¶3} After being diagnosed with prostate cancer, Daniel sought treatment from Dr. Kaouk, a urologist who specialized in robotic prostatectomy, a "minimally invasive" laproscopic surgery. Daniel was aware of the various treatment options, including an

open surgical approach, and decided to pursue the robotic removal of his prostate gland. Daniel told Dr. Kaouk that in 1989 he had surgery to remove 14 inches of his bowel and had a temporary colostomy to treat abscessed diverticulitis. The prior abdominal surgery left significant scar tissue. Nevertheless, Dr. Kaouk recommended a robotic prostatectomy to remove the prostate gland. Daniel testified that Dr. Kaouk described only the benefits of robotic surgery and never discussed the risks associated with it.

{¶4} After the surgery was completed, Daniel developed an infection. During a subsequent exploratory surgery to identify the cause of the infection, Dr. Kaouk discovered that Daniel's bowel was perforated. Dr. Kaouk and Dr. Tracy Hull, a colorectal surgeon at CCF, repaired the damaged area, and Daniel recovered in the intensive care unit.

{¶5} The Gaglianos claimed that Dr. Kaouk deviated from the standard of care by not adequately informing Daniel of the increased risks of bowel perforation during robotic surgery as opposed to the alternative open surgical method. As expected, Dr. Kaouk testified that he discussed all of the available treatment options with the Gaglianos, including both the benefits and the risks associated with each option.

{¶6} The Gaglianos called Dr. Mark J. Fallen, a board-certified urologic surgeon who regularly performs radical prostatectomies, as their expert witness. Dr. Fallen testified that when treating a patient for prostate cancer, the standard of care requires the surgeon to explain the risks and benefits of various treatment options. Dr. Fallen also

opined that robotic surgery has a higher risk of bowel injury than the open procedure and that, because Dr. Kaouk recommended the robotic approach without advising Daniel of the increased risk, he deviated from the standard of care. However, on cross-examination Dr. Fallen admitted that he was not aware of any literature as of the date of Daniel's surgery that supported his conclusion that the robotic procedure was riskier than open surgery.

{¶7} Daniel Gagliano testified that Dr. Kaouk never discussed the risks of a robotic prostatectomy. However, when confronted with his prior deposition testimony, he admitted that Dr. Kaouk did in fact explain the risks and benefits of the robotic surgery. Dr. Kaouk testified that he discussed the various treatment options and their respective risks and benefits with Daniel. He and defense expert Dr. David Albala, another expert in robotic surgeries, testified that the robotic method is not riskier than the open method, and that Dr. Kaouk did not breach the standard of care when he recommended that treatment option.

{¶8} At the conclusion of the trial, the jury returned a defense verdict. The Gaglianos filed a motion for a new trial, claiming they did not receive a fair trial because the defense violated the court's ruling on a motion in limine by informing the jury that the Gaglianos had consulted with a disbarred lawyer. The court denied the motion for a new trial. The Gaglianos now appeal and raise two assignments of error.

Motion for New Trial

{¶9} In their first assignment of error, the Gaglianos argue that the trial court erred in overruling their motion for a new trial. The Gaglianos claim defense counsel suggested to the jury that a disbarred lawyer provided the information on which their expert relied to reach his opinions. They claim these comments not only violated a court order in limine but also unfairly prejudiced their expert's credibility.

{¶10} We review the ruling on a motion for a new trial for an abuse of discretion. *Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312, 1995-Ohio-224, 649 N.E.2d 1219. Unless the trial court's decision was unreasonable, arbitrary, or unconscionable, we will not disturb it on appeal. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶11} Among the reasons listed in Civ.R. 59(A), a new trial is warranted upon a finding of sufficient prejudicial error that deprives the movant of a fair trial. Civ.R. 59(A)(1). To obtain a new trial on grounds of misconduct or irregularities at trial, the movant must establish the presence of serious irregularities in the proceedings that deprived the party of a fair trial, such as those that "could have a material adverse effect on the character of and public confidence in judicial proceedings." *Wright v. Suzuki Motor Co.*, 4th Dist. No. 03CA2, 2005-Ohio-3494, ¶ 114; *see also Meyer v. Srivastava*, 141 Ohio App.3d 662, 752 N.E.2d 1011 (2d Dist.2001); *Mullins v. Inderbitzen*, 6th Dist. No. L-03-1121, 2004-Ohio-1658. The Gaglianos contend that defense counsel's reference to their consultation with a disbarred lawyer deprived them of a fair trial.

**{¶12}** The irregularity, or objectionable comments, occurred during defense counsel's cross-examination of Dr. Fallen. Dr. Fallen testified that he first became involved in this case when he received a letter from Rick Goldberg ("Goldberg"), who described the facts of the case. When defense counsel suggested to Dr. Fallen that Goldberg was the Gaglianos' litigation advisor, Dr. Fallen replied that he thought Goldberg and Daniel Gagliano had been long-time friends, and that if Goldberg was a litigation advisor, he would be sitting at the plaintiffs' table. In response, defense counsel stated: "Well, he can't sit there at the table because he's a disbarred lawyer." Plaintiffs' counsel objected, and the court stated: "Hold it. Counsel, that was inappropriate." The court temporarily excused the jury and warned defense counsel:

> You want to taint this expert's opinion with Mr. Goldberg's criminal behavior? Where is the nexus there? * * * You used this as an opportunity to get something that's totally irrelevant in front of the jury and that was inappropriate. If it happens again, there's going to be a mistrial and the defense is going to be sanctioned, okay?

**{¶13}** When the jury returned, the court charged the jury as follows:

> I've stricken the last commentary made by defense counsel as not relevant to this particular proceeding. If you did hear it — you may not have heard it. If you did hear it, disregard it as though you didn't hear it. It's really not relevant to the issue being discussed. The parties have agreed to move on to other areas.

**{¶14}** The trial proceeded without any other mention of Goldberg's crimes or disbarment. No request was made that a mistrial be declared at this point in the trial.

{¶15} Although we agree that counsel's comment about Mr. Goldberg's disbarment was inappropriate, irrelevant, and arguably a violation of the court's order, we do not find that the Gaglianos were deprived of a fair trial. First, we presume that the jury followed the court's instructions. *State v. Loza*, 71 Ohio St.3d 61, 79, 641 N.E.2d 1082 (1994). The court explained to the jury that defense counsel's comment about Mr. Goldberg was irrelevant to the proceedings and instructed them to disregard it. We must assume they followed these instructions.

{¶16} Second, the Gaglianos complain of this one error as causing an unfair trial. "'[A litigant] is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *Grundy v. Dhillon*, 120 Ohio St.3d 415, 2008-Ohio-6324, 900 N.E.2d 153, ¶ 30, quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).

{¶17} Moreover, the weight of the evidence overwhelmingly supports the jury's defense verdict. Although the basis of the Gaglianos' claim was that Dr. Kaouk failed to inform them of the risks associated with a robotic prostatectomy, when confronted with prior inconsistent deposition testimony, Daniel conceded that Dr. Kaouk did in fact discuss the risks with him.

{¶18} Further, the Gaglianos' only expert witness, Dr. Fallen, admitted that he is not certified to perform robotic laproscopic prostatectomies. He also admitted that he did not know when robotic prostatectomies became standard and that bowel perforations

can occur in the absence of negligence in both robotic and open procedures. Although he claimed there were greater risks associated with the robotic approach, he admitted that he had no urologic medical literature to support this conclusion. (Tr. 273.) Dr. Fallen's admitted lack of knowledge about robotic prostatectomies could only lead the jury to conclude that his opinion was unreliable.

{¶19} In contrast, both Dr. Kaouk and defense expert Dr. Albala, testified that there are no greater risks posed with the robotic approach as opposed to the open surgical approach, even for patients with prior abdominal surgeries such as Daniel. Because Dr. Albala is certified to perform robotic prostatectomies, his testimony on the subject was knowledgeable and reliable. He testified that Dr. Kaouk's recommendation to pursue the robotic approach was not a deviation from the standard of care.

{¶20} Thus, the evidence overwhelmingly supports the jury's conclusion that Dr. Kaouk was not negligent. Therefore, defense counsel's improper comment did not deprive the Gaglianos of a fair trial.

{¶21} Accordingly, we overrule the first assignment of error.

### Other Patients of Dr. Kaouk

{¶22} In their second assignment of error, the Gaglianos argue the trial court abused its discretion by precluding several fact witnesses from testifying. The Gaglianos sought to call three former patients of Dr. Kaouk to testify about their discussions with Dr. Kaouk prior to their surgeries. They claimed the conversations were admissible as

proof of habit. The defense filed a motion in limine to preclude these witnesses from testifying. The court granted the motion but indicated that the ruling was subject to revision depending on the cross-examination of Dr. Kaouk.

**{¶23}** The Gaglianos never sought to call these witnesses during the trial. They never raised the issue at the conclusion of Dr. Kaouk's testimony. Because they neither objected nor proffered the testimony after the motion in limine was granted, they failed to preserve this issue for appeal.

**{¶24}** "An appellate court need not review the propriety of a trial court's ruling on [a motion in limine] unless the claimed error is preserved by an objection, proffer, or ruling on the record[.]" *State v. Grubb*, 28 Ohio St.3d 199, 203, 503 N.E.2d 142 (1986). In *Grubb*, the Ohio Supreme Court explained that the interlocutory or tentative nature of a motion in limine requires the party opposing the motion to affirmatively raise the issue at the appropriate time during the trial or forfeit any error caused by the exclusion of the evidence. For this reason, the *Grubb* court explained,

> it is incumbent upon a [party], who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal.

**{¶25}** The "failure to timely advise a trial court of possible error, by objection or otherwise, results in a [forfeiture] of the issue for purposes of appeal." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).

**{¶26}** Because the Gaglianos never proffered the testimony of these three witnesses at the appropriate time during the trial, they have waived any error caused by the exclusion of their testimony.

**{¶27}** Therefore, we overrule the second assignment of error.

**{¶28}** Judgment affirmed.

It is ordered that appellees recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
COLLEEN CONWAY COONEY, JUDGE

MELODY J. STEWART, P.J., and
JAMES J. SWEENEY, J., CONCUR