SCHWOCHOW et al., Appellants,

v.

CHUNG et al., Appellees.

[Cite as *Schwochow v. Chung* (1995), 102 Ohio App.3d 348.]

Court of Appeals of Ohio,
Sixth District, Sandusky County.

No. S–94–006.

Decided March 31, 1995.

*Thomas R. Theado,* for appellants.

*James W. Hart* and *Randolph E. Digges III,* for appellees.

ABOOD, Presiding Judge.

ᐟThis is an appeal from a judgment of the Sandusky County Court of Common Pleas, which, following a jury trial, found in favor of appellees on appellants' medical malpractice claim arising out of the medical care provided to their son prior to his death.

Appellants set forth the following assignment of error:

"During the trial of medical malpractice claims predicated on negligent failure to diagnose, the trial court committed prejudicial error by prohibiting plaintiffs from eliciting testimony from any witness to establish that the words 'no fever'—the entry critical to the defendant-doctor's diagnosis—were not written at the time of the defendant-doctor's examination of the decedent but in fact were added to the chart at least six months after that examination. Transcript of Jury Trial (filed June 17, 1994) at 37–38, 201–204, 689–693, and 901."

The facts that are relevant to the issues raised on appeal are as follows. When eight-year-old Tony Schwochow awoke on the morning of November 16, 1990, he told his mother that he did not feel well and that he had not slept well during the night. Tony showered, dressed and went to school with his mother, Brenda Schowchow, who was working in the school library that day. Because Tony appeared tired and limped when he walked, Brenda told his teacher that he had not slept well the night before. When part way through the morning Tony fell asleep at his desk, his teacher, Carol Franks, was unable to awaken him. Franks called the principal to the classroom but he also was unable to awaken Tony, and

they summoned Brenda from the library. Brenda took Tony, who had awakened by then, back to the library with her briefly and then drove him directly to the office of appellee Soo W. Chung, the family's pediatrician.

Brenda left Tony in the car while she went into the office to ask if Chung could see Tony right away. The receptionist responded that the doctor could, and Brenda carried her son into an examining room. Before the doctor came in, a nurse wrote on Tony's chart that his chief complaint was "pain, right lower calf muscle, injury yesterday 11/15/90." No one in the doctor's office took Tony's temperature. Chung observed that Tony limped when he walked from the examination table to the doorway and sent Tony to the hospital for an x-ray of his right ankle. Brenda drove her son directly to the hospital for the x-ray, and the results, reported to Chung's office while Brenda and Tony waited at the hospital, showed no fractures. Brenda was told by the doctor's receptionist that afternoon to contact Chung if the leg pain continued. Brenda took Tony home and laid him on the sofa, where he fell asleep. Prior to 6:30 p.m., Brenda carried Tony upstairs to his brother's bed because it was closer to his parents' room. Brenda and Tony's father, Charles, decided to go out that evening as they had planned and a babysitter arrived at approximately 6:30. Brenda and Charles showed the babysitter where Tony was sleeping and left at approximately 7:00. When the babysitter checked on Tony at approximately 8:30 she took his temperature, which was one hundred one degrees, and gave him some pain medication. At approximately 10:00 she checked on Tony again. Brenda and Charles returned home around midnight and looked in on Tony, who was sleeping, before going to bed.

Tony awoke at about 6:00 a.m. on November 17, took a shower and dressed but then went back to bed. When Brenda checked on Tony at approximately 9:30, she could not awaken him and immediately called her husband. Charles came home from work and they took Tony to the emergency room at Fremont Memorial Hospital. When they arrived at the hospital at approximately 10:30 a.m., a nurse and a doctor in the emergency room each took Tony's history. When the medical team began to suspect meningococcal meningitis, Tony was given intravenous antibiotics and was sent by life-flight to Toledo Hospital. By the time Tony arrived at Toledo Hospital, he was in a coma. Tony never regained consciousness and died on November 20, 1990.

On May 7, 1992, plaintiffs filed a wrongful death and survival action against Chung and his professional corporation, in which they alleged that as a direct and proximate result of appellees' negligent conduct Anthony Schwochow sustained injuries and wrongfully came to his death on November 20, 1990. On October 22, 1992, appellants took a discovery deposition of Chung, at which the doctor's original office chart for Tony was marked as an exhibit. At the deposition,

Chung testified that when he examined Tony on November 16, 1990, he did not think that infection was the cause of Tony's condition because the child's history indicated that his ankle pain was the result of a trauma that occurred the day before. He stated that that was why no one took Tony's temperature. The deposition concluded that day with an agreement to continue it as soon as it could be rescheduled. On December 3, 1992, the deposition resumed and counsel for appellees discovered that the office chart was missing. In response, counsel for appellants indicated that they had obtained the chart from the court reporter after the first deposition and had sent it to an expert for analysis. On April 5, 1993, the trial court ordered appellants to return the chart to the jurisdiction of the court but, over appellees' objection, permitted appellants' counsel to retain possession of it. On August 11, 1993, the trial court ordered that an examination by limited destructive testing could proceed and on December 2, 1993, the test was performed on the chart by a testing laboratory.

On January 18, 1994, the first day of trial, appellees filed a motion *in limine* which requested an order "prohibiting plaintiffs from introducing, or attempting to introduce, by comment or statement of counsel, or by any question or comment to any witness or otherwise, any evidence * * * [t]hat the words 'no fever' were added to Dr. Chung's medical chart for Anthony Schwochow on a date other than November 16, 1990." Appellees argued in support of the motion that the timing of the "no fever" notation was collateral to the medical negligence issue presented in the case and that the introduction of the evidence for the purpose of impeaching Chung was prohibited by Evid.R. 608(B). Appellants responded that Chung had admitted in his pretrial deposition that the claimed absence of fever was the basis on which he had ruled out the possibility of infection when he examined Tony and that, therefore, evidence of whether Tony did have a fever at the time of the examination and whether Chung altered his office chart at a later date was not collateral but critical to the issue of whether competent medical care was provided. Appellants argued further that evidence of the alteration of the medical chart would be admissible to contradict Chung's testimony on other matters that were relevant to the malpractice claim.

Prior to opening statements, the trial court entered its ruling on the motion, in which it found that appellants were offering the evidence that the chart was altered as proof of Chung's character, pursuant to Evid.R. 404(A)(3), that extrinsic evidence attacking Chung's testimony that he had not altered the chart was not allowed under Evid.R. 608(B), and that appellants were prohibited from eliciting testimony from any witnesses to establish that the chart had been altered. Appellants requested at a later point in the trial that the court reconsider its ruling but the court refused. The trial concluded on January 27, 1994, with the jury returning a verdict in favor of appellees.

In their sole assignment of error, appellants assert that the trial court erred when it excluded evidence that the words "no fever" were added to Tony's medical chart "at least six months after" November 16, 1990. Appellants first argue that, while Evid.R. 608(B) prohibits extrinsic evidence of specific instances of a witness's conduct when it is offered for the sole purpose of attacking the witness's character for truthfulness, it does not prohibit such evidence when it is otherwise directly relevant to the issues in dispute. Appellants assert further that evidence that the words "no fever" had not been entered on Tony's chart when Chung examined him on November 16 was directly relevant to appellants' case in several respects. Appellants argue that the primary issue in this case is whether Chung failed to consider that an infection may have been the cause of Tony's symptoms and, therefore, whether or not he made a notation about the presence or absence of fever on Tony's chart at the time of the examination was highly probative as to whether Chung had considered fever. Appellants assert that the trial court's ruling prevented them from presenting evidence that the words "no fever" were written on the chart at least six months after Chung examined Tony and that such evidence could have been used to establish that the chart, in its original condition, did not contain any reference to fever, which would strongly support the inference that the doctor never considered a factor strongly indicative of infection. Appellants also assert, although for the first time on appeal, that evidence that the chart was altered was admissible to show that Chung was aware of and tried to cover up his malpractice.

Appellees respond that the timing of the "no fever" entry on the office chart is collateral to the medical malpractice claim. Appellees assert that, because Tony's temperature was admittedly not taken by Chung, the presence of the words "no fever" on the chart did not prove that the child did not have a fever and, conversely, a showing that the words were not entered on the chart at the time he was examined would not prove that Tony did have a fever. Appellees further assert that appellants attempted to offer the extrinsic evidence that the chart had been altered solely to attack Chung's character for truthfulness and that that issue was a collateral matter that is prohibited by Evid.R. 608(B) as well as by Evid.R. 403(A) because its probative value was substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury. Last, appellees assert that evidence that Chung altered the office chart would not be admissible to show consciousness of wrongdoing because the words "no fever" alone would not prove that he provided less than adequate medical care in light of his admission that he did not take Tony's temperature.

Evid.R. 608(B) provides:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. * * *"

Evid.R. 403(A) provides:

"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

The admission of evidence as well as the regulation of the examination of witnesses rests within the sound discretion of the trial court and that court's ruling as to such matters will not be reversed without a demonstration of an abuse of that discretion resulting in material prejudice to a party. *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291, 1298–1299; *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058. An abuse of discretion consists of more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

This court has reviewed the entire record of proceedings in the trial court and the law, and upon consideration thereof we find preliminarily that (a) evidence that Chung altered the office chart was not offered by appellants only to attack the doctor's character for truthfulness but also as being relevant to the ultimate issue of the adequacy of the care which Chung provided to Tony, and therefore it is not prohibited by Evid.R. 608(B); (b) if admitted, this evidence could be considered as relevant to the issue of whether Chung actually considered the possibility of infection when he saw Tony on November 16, 1990; (c) the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury, Evid.R. 403(A); and (d) the trial court abused its discretion by excluding appellants' evidence that Chung had altered the chart.

Having made this finding, we now must determine whether the trial court's ruling prejudicially affected appellants' right to a fair trial and was therefore inconsistent with substantial justice.

The record indicates that appellees presented extensive testimony from several witnesses, including three doctors, as to the symptoms and treatment of meningococcal meningitis and Chung's evaluation and treatment of Tony.

The record indicates that appellants offered evidence which included the testimony of Brenda and Charles Schwochow, Tony's school principal, and Tony's teacher as to Tony's condition during the last days of his life, including the time just prior to his being taken to Chung's office on November 16; the nurse in Chung's office; and two doctors. Evidence appellants were prevented from presenting to the jury, however, included the testimony of Richard Brunelle, the forensic chemist who performed the relative ink dating test on the chart on December 2, 1993 and formed the opinion that the words "no fever" were written

at least six months after the other entries for November 16, 1990; the testimony of Steve Cain, the forensic scientist who conducted a nondestructive analysis of the chart and concluded that the writing styles and spacing of the "no fever" entry were inconsistent with Chung's writings in the rest of his November 16, 1990 notes; the testimony of Irene Johnson, Chung's receptionist, who had stated during deposition that she did not recall seeing the words "no fever" on Tony's chart when it was given to her on the afternoon of November 16, 1990; the testimony of Brenda Schwochow that she saw Chung write something on the chart before it was copied and handed to her in November 1991; and the testimony of two medical experts that the words "no fever" on the chart are inconsistent with standard medical charting.

After a thorough examination of all the evidence presented at trial and the evidence proffered by appellants as summarized above, this court finds that the evidence in question was relevant to the central issue of the standard of care which was provided to Tony, and its exclusion by the court from the jury's consideration was highly prejudicial to appellants' claim. Accordingly, this court finds that the trial court's exclusion of the evidence that Tony Schwochow's medical chart was altered materially prejudiced appellants' case, and, therefore, appellants' sole assignment of error is well taken.

On consideration whereof, this court finds that substantial justice was not done the parties complaining, and the judgment of the Sandusky County Court of Common Pleas is reversed. This cause is remanded to that court for further proceedings consistent with this opinion. Court costs assessed to appellees.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK, J., concurs.

GLASSER, J., dissents.

GEORGE M. GLASSER, Judge, dissenting.

I do not agree with the finding of the majority that the trial court's exclusion of proffered evidence of a later addition of "no fever" to the chart of the decedent constituted an abuse of discretion and, therefore, reversible error.

Evid.R. 401 defines relevant evidence as follows:

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Evid.R. 608(B) prohibits extrinsic evidence of specific instances of a witness's conduct when it is offered for the sole purpose of attacking the witness's

character for truthfulness, unless such evidence is otherwise directly relevant to the issue in dispute. The underlying issue in dispute in this case is whether the appellee breached the acceptable standard of care in regard to the decedent. The undisputed testimony is that the decedent's temperature was not taken by the appellee or his staff during the office visit. Chung does not allege in his testimony that the chart entry is the result of any objective finding on his part. Therefore, the presence of the entry "no fever" is of no probative value. The trial court properly concluded that the proffered evidence was offered only to attack the doctor's character for truthfulness and was not relevant to the ultimate issue of the adequacy of care provided to the decedent. Accordingly, the evidence was prohibited by Evid.R. 608(B).

Additionally, Evid.Rule 403 provides as follows:

"(A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

"(B) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

The probative value, if any, of the evidence that is the subject of the assignment of error is substantially outweighed by the danger of unfair prejudice. Also, the potential for confusion of the issues or of misleading the jury is great. Any alleged probative value that would result from the introduction of the evidence is substantially outweighed by considerations of undue delay and needless presentation of cumulative evidence.

Accordingly, I do not find that the trial court's exclusion of the proffered evidence constituted an abuse of discretion, and I would affirm the trial court in this matter.