DECISION AND JUDGMENT ENTRY
{¶ 1} Tina Seibert and her minor son, Tim Dwayne Moore, filed a complaint against Tim's pediatrician, Rick Murphy, M.D., alleging that Murphy negligently failed to diagnose Tim and thereby caused injuries to him. After a jury trial before the Scioto County Court of Common Pleas, the court found in favor of Murphy. Seibert filed a motion for a new trial and a motion for relief from judgment, alleging that Murphy's expert gave false testimony during the trial. Seibert attached affidavits proving that the expert's testimony was false, but the trial court denied her motions. Seibert appeals, asserting that the trial court abused its discretion and permitted a manifest miscarriage of justice by denying her motions. Because we find that Seibert could have corrected the irregularity in the proceedings by presenting evidence contrary to the expert's testimony during the trial, or at least could have sought a continuance to preserve her right to do so, Seibert waived her right to object now to the false testimony. Accordingly, we affirm the judgment of the trial court.
 I.
{¶ 2} Seibert took Tim to Murphy's office on the morning of February 14, 1997 because Tim had a high fever, sore throat, headache, cramping, and his knee joints were swollen to the point where Tim had difficulty walking. Murphy's records show that he diagnosed Tim with the flu, prescribed Tylenol and Ibuprofen, and advised Seibert to return in a week if Tim's condition did not improve. Murphy also orally told Seibert to call his office if Tim's condition worsened.
{¶ 3} Seibert called Murphy's office in the early afternoon and informed the nurse that Tim was vomiting. The staff advised Seibert to give the medication more time to take effect. Around 5:00 p.m., Seibert noticed that a rash appeared on Tim's body, but she did not call Murphy. By 9:00 or 10:00 p.m., Tim's condition had worsened and Seibert took him to the emergency room at the Southern Ohio Medical Center.
{¶ 4} Doctors at SOMC diagnosed Tim with meningococcemia and meningitis. He was transported by a Life Flight helicopter to Children's Hospital in Columbus, where he remained until March 1, 1997. He suffered permanent injuries that limit his ability to walk, caused him to lose parts of seven fingers, and left permanent scarring.
{¶ 5} At trial, Seibert presented an expert who testified that Murphy's treatment and diagnosis of Tim was negligent because Murphy did not conduct proper investigative tests despite the fact that Tim complained of symptoms, such as being unable to walk and having swollen joints, which are not typical of the flu. Seibert's expert opined that Tim's injuries could have been completely avoided if Murphy had conducted a proper and thorough examination.
{¶ 6} Murphy presented the expert testimony of Dr. Blaize Congeni, who opined that Murphy met the acceptable standard of care in treating Tim. Dr. Congeni testified that the fact that Tim did not develop a rash until around 5:00 p.m. was very important in this case, because once a rash develops, the diagnosis of meningococcal disease is readily apparent and antibiotics should be administered immediately.
{¶ 7} Seibert attempted to impeach Dr. Congeni by referring to his sworn testimony in a prior case, Schwochow v. Chung (1995),102 Ohio App.3d 348, where Dr. Congeni testified for the plaintiff on a very similar set of facts. In the Schwochow case, Dr. Congeni testified that the doctor, Dr. Chung, did not perform to an acceptable standard of care by failing to conduct a proper and thorough examination and order appropriate tests for his patient. The child was later diagnosed with meningitis and died. When Seibert confronted Dr. Congeni with this prior testimony, Dr. Congeni testified that the facts in the prior case were distinguishable from this case because the patient in Schwochow had a rash when Dr. Chung first saw him.
{¶ 8} Seibert vigorously attempted to get Dr. Congeni to admit that the patient in Schwochow did not have a rash when first presented to Dr. Chung. Dr. Congeni admitted that he could not identify any place in the record that stated that the patient did or did not have a rash, but noted that the attorneys asked him numerous questions about the rash associated with meningococcal disease. Dr. Congeni concluded, "the record stands for itself. The patient had a rash." Dr. Congeni further stated that the rash is critical to diagnosis. Dr. Congeni insisted that he knew "for a fact" that the patient in Schwochow had a rash when Dr. Chung examined him. The parties agree that Tim did not have a rash at the time Murphy examined him.
{¶ 9} The jury returned a verdict for Murphy. After the trial, Seibert obtained affidavits from the plaintiff and the plaintiff's attorney in Schwochow, as well as Dr. Chung's medical chart. Contrary to Dr. Congeni's testimony in this case, the affidavits and chart affirmatively establish that the patient did not have a rash at the time Dr. Chung examined him.
{¶ 10} Seibert filed a motion for a new trial and attached the affidavits, asserting that Dr. Congeni's false testimony created a miscarriage of justice. Seibert also filed a motion for relief from judgment. The trial court denied both motions, and Seibert appeals. Seibert asserts the following assignments of error: "I. The Court Erred and Abused its Discretion by Overruling Plaintiff's Motion for a New Trial. II. The Court Erred and Abused its Discretion by Overruling Plaintiff's Civ.R. 60(B) Motion."
 II.
{¶ 11} Seibert asserts in her first assignment of error that the trial court erred in failing to grant her motion for a new trial pursuant to Civ.R. 59(A)(1), (2), (8), or the catchall provision.
{¶ 12} Pursuant to Civ.R. 59(A), "[a] new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: (1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial; (2) Misconduct of the jury or prevailing party; * * * (8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial; * * * In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown."
{¶ 13} The purpose of Civ.R. 59(A) is to empower the trial court to prevent a miscarriage of justice. Malone v. Courtyard by Marriott L.P.
(1996), 74 Ohio St.3d 440, 448. We will not reverse a trial court's denial of a motion for new trial absent an abuse of discretion. Shark v.Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307; Taylor v. Ross
(1948), 150 Ohio St. 448. An abuse of discretion implies that a court's ruling is unreasonable, arbitrary, or unconscionable; it is more than a mere error in judgment. Richard v. Seidner (1996), 76 Ohio St.3d 149;Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
{¶ 14} The term "irregularity" in the context of a motion for a new trial is historically described as "very comprehensive," and a departure from the due proceeding whereby a party, "with no fault on his part, has been deprived of some right or benefit otherwise available to him."Sherwin-Williams Co. v. Globe Rutgers Fire Ins. Co. (1912), 20 Ohio C.C.(N.S.) 151. Regarding requests for new trials where the movant claims that false testimony was given, Ohio has required the movant to show that "ordinary prudence could not have anticipated or guarded against such false testimony." Mason v. Tremayne (1927), 115 Ohio St. 398, syllabus.
{¶ 15} Murphy contends that Dr. Congeni did not testify falsely and that Dr. Congeni's credibility was a question for the jury. In support, Murphy cites Tanzi v. New York Cen. R.R. Co. (1951), 155 Ohio St. 149, for its statement regarding a request for a new trial where the movant claims that false testimony was given: "A witness is required to take an oath before giving his testimony and is subject to prosecution for perjury if he gives false testimony. Furthermore, juries have the duty to detect and disregard false testimony." Tanzi at 153; Markan v. Sawchyn
(1987), 36 Ohio App.3d 136, 138. The Court went on to state, however, "in the event that a jury does not detect and disregard false testimony, the trial court and the Court of Appeals each has a clear duty to grant a new trial on the weight of the evidence where it appears probable that a verdict is based upon false testimony." Tanzi at 153; Markan at 138. In both Tanzi and Markan, the court declined to grant a new trial because the movant failed to demonstrate that the challenged testimony was false. See Tanzi at 153; Markan at 138.
{¶ 16} Seibert relies upon Meyer v. Srivasta (2001),141 Ohio App.3d 662, wherein the court granted the plaintiffs/appellants a new trial on the grounds of irregularity in the proceeding. The defendants/appellees presented photographs at trial that allegedly depicted a water heater that caused plaintiffs' injuries, but the photographs later were found to depict a different water heater. The age of the water heater, established at trial by the serial number in the photographs, was material to the case.
{¶ 17} In overturning the trial court's denial of the plaintiffs' motion for a new trial, the court noted that the "[p]laintiffs might have avoided the prejudice which flowed from introduction of the photographs by insisting on the necessary foundational evidence instead of stipulating to their authenticity." Meyer at 699. However, the court declined to find that the plaintiffs waived their objection to the resulting prejudice, finding "the better policy is to regard the mistake as an irregularity chargeable to [defendants], which misrepresented what the photographs depicted." Id.
{¶ 18} In this case, Dr. Congeni gave false testimony. While the parties based much of their argument on whether Dr. Congeni knowingly gave false testimony, we find that debate to be irrelevant to the question of whether the testimony was false. The record reflects that Dr. Congeni testified not merely to his "recollection," but rather that he knew "for a fact" that the patient in Schwochow had a rash. The record further affirmatively demonstrates that the patient in Schwochow did not, in fact, have a rash. Thus, Dr. Congeni gave false testimony.
{¶ 19} We further find that it appears probable that the jury's verdict was based on false testimony. The crux of this medical malpractice action amounted to whose expert the jury believed. Dr. Congeni stated in his testimony that the presence or absence of a rash was critical to his opinion in this case and in Schwochow. While it is possible that Dr. Congeni would have been able to distinguish his testimony in the two cases in a different way if presented with the true facts regarding each patient's rash, the testimony presented to the jury indicates that the rash was the crucial distinguishing factor between the two cases. Based on the testimony given, if the jury had learned the truth about the rash in Schwochow, it likely would have affected their assessment of Dr. Congeni's credibility.
{¶ 20} Nonetheless, we cannot find that the trial court abused its discretion in declining to grant a new trial on the grounds of irregularity in the proceedings. Seibert contends that, just as the wrongful action of presenting false photographs was attributable to the defendants in Meyer, Murphy's presentation of the false testimony of Dr. Congeni should be attributed to Murphy. Thus, Seibert contends that this irregularity is chargeable to Murphy, and that she is without blame in the matter being submitted to the jury without proof that Dr. Congeni's testimony was false.
{¶ 21} We disagree. Seibert has shown only that Dr. Congeni's testimony regarding the rash was false, not that the remainder of his testimony or any of the testimony he gave on direct examination was false. Seibert elicited the testimony regarding the rash, knowing its materiality to her case. Therefore, the false testimony is properly "chargeable" to Seibert.
{¶ 22} Seibert also argues that the trial court and Murphy wrongly shift the blame to her for failing to obtain evidence of the rash before trial, and asserts that she could not have anticipated that Dr. Congeni was going to give false testimony. While we agree that Seibert was not required in the exercise of reasonable diligence to anticipate Dr. Congeni's false testimony, she did anticipate that Dr. Congeni might not remember the facts of Schwochow. For that reason, Seibert obtained and provided Murphy and Dr. Congeni with copies of the transcript fromSchwochow weeks before trial. In her own review of the transcript, Seibert should have discovered that the transcript did not clearly state whether the patient in Schwochow did or did not have a rash.
{¶ 23} Moreover, Seibert was required to act once she elicited the false testimony from Dr. Congeni. Dr. Congeni's testimony put Seibert on notice that evidence of the absence of a rash in Schwochow would be helpful to her case. Thus, Seibert had reasonable cause to believe that she could obtain favorable and available evidence of a material nature by contacting the plaintiff from Schwochow. As the Court has found in the context of a motion for a new trial based on newly discovered evidence, a party aware of material, favorable, and available evidence has "[a] duty, in the exercise of due diligence, to ask for a continuance, if necessary, to investigate, and to produce such evidence, if found."Domanski v. Woda (1937), 132 Ohio St. 208, 208, paragraph four of the syllabus. A party cannot, having submitted the case without fulfilling that duty, later successfully claim the right to a new trial after an unfavorable verdict. Id.; see, also, Rothstein v. Rothstein (1958),109 Ohio App. 234, 239.
{¶ 24} In this case, Seibert had reasonable cause to believe that she could obtain proof that the patient in Schwochow did not have a rash. Therefore, Seibert had a duty to seek that evidence and, if necessary, request a continuance in order to obtain it and present it to the jury. Instead, Seibert waited until after she had received an unfavorable verdict to seek out the evidence she needed to prove the absence of a rash in Schwochow.
{¶ 25} For these reasons, we cannot find that the trial court abused its discretion in declining to grant Seibert a new trial on the grounds of an irregularity in the proceedings.
{¶ 26} For similar reasons, we find that the trial court did not abuse its discretion in refusing to grant a new trial on the other grounds suggested by Seibert. First, Civ.R. 52(A)(2) permits a new trial if there is misconduct by the prevailing party. However, Seibert did not present any evidence that Murphy was aware during the trial that Dr. Congeni's testimony regarding the rash was false. Therefore, we find no misconduct on Murphy's part.
{¶ 27} Second, Civ.R. 59(A)(8) provides for a new trial for newly discovered material evidence. However, newly discovered evidence only entitles the movant to a new trial if he can show that the evidence could not have been discovered and produced at trial with reasonable diligence. See Domanski, supra; Slack v. Cropper (2001),143 Ohio App.3d 74. As we found above, Seibert could have discovered evidence of the absence of the rash in Schwochow in time to present the evidence in her own case, or at least could have requested a continuance to obtain such evidence. Thus, Seibert is not entitled to a new trial on the grounds of newly discovered evidence.
{¶ 28} Finally, Civ.R. 59(A) provides that the trial court may grant a new trial "in the sound discretion of the trial court for good cause shown." In this case, Seibert could have prevented any prejudice arising from Dr. Congeni's false testimony by taking proper steps to procure evidence to impeach him at trial. The court found that Seibert used her opportunity to impeach Dr. Congeni in her limited cross-examination of him, and thus that Seibert did not show good cause for a new trial. We cannot find that the trial court abused its discretion in this determination.
{¶ 29} Because we find that the trial court did not abuse its discretion in denying Seibert's motion for a new trial, we overrule her first assignment of error.
 III.
{¶ 30} In her second assignment of error, Seibert contends that the trial court erred in denying her motion for relief from judgment pursuant to Civ.R. 60(B)(3) and (5).
{¶ 31} In an appeal from a Civ.R. 60(B) determination, a reviewing court must determine whether the trial court abused its discretion.Richard v. Seidner (1996), 76 Ohio St.3d 149, 151, citing RoseChevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 20. An abuse of discretion connotes conduct that is unreasonable, arbitrary, or unconscionable. Richard at 151, citing Edwards v. Toledo City SchoolDist. Bd. of Edn. (1995), 72 Ohio St.3d 106, 107. In order to prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must demonstrate: (1) a meritorious claim or defense; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) timeliness of the motion. Rose Chevrolet at 20, citing GTEAutomatic Electric v. ARC Industries (1976), 57 Ohio St.3d 146, paragraph two of the syllabus; see, also, Buckeye Fed. S. L. Assn. v.Guirlinger (1991), 62 Ohio St.3d 312, 314. If one of these three requirements is not met, the motion should be overruled. Rose Chevrolet
at 20, citing Svoboda v. Brunswick (1983), 6 Ohio St.3d 348, 351; Hopkinsv. Quality Chevrolet, Inc. (1992), 79 Ohio App.3d 578.
{¶ 32} Civ.R. 60(B) provides that an adverse party must make the motion within a reasonable time, and under Civ.R. 60(B)(3), not more than one year after the date of judgment. Seibert filed her motion for a new trial approximately two months after the court entered judgment against her. Thus, she timely filed her motion. Additionally, Seibert possesses a meritorious medical malpractice claim to present if relief is granted. We are not persuaded by Murphy's argument that Seibert has not proven her medical malpractice claim. "The movant's burden is to allege a meritorious [claim or] defense, not to prevail with respect to the truth of the meritorious [claim or] defense." Colley v. Bazell (1980),64 Ohio St.2d 243, 247, n. 3.
{¶ 33} Civ.R. 60(B)(3) provides for relief from judgment upon "fraud, misrepresentation or other misconduct of an adverse party." SeeOsbourne v. Osbourne (1992), 81 Ohio App.3d 666. By its plain terms, this rule applies only when an adverse party, not an adverse witness, testifies falsely. The United States Sixth Circuit Court of Appeals has stated that a motion for relief from judgment based on fraud may be granted under the Federal Rules of Civil Procedure when "the court is reasonably well satisfied that the testimony by a material witness is false." (Emphasis added.) Abrahamsen v. Trans-State Exp., Inc. (C.A.6, 1996), 92 F.3d 425, 428; Davis v. Jellico Community Hosp., Inc. (C.A.6, 1990), 912 F.2d 129, 134. However Ohio courts, even when employing theAbrahamsen language, have limited their application of this rule to situations involving false testimony on the part of a party to the proceedings. See Goldshot v. Goldshot, Montgomery App. No. 19000, 2002-Ohio-2056; Caron v. Caron (Dec. 3, 1998), Franklin App. No. 98AP-369.
{¶ 34} Even if Civ.R. 60(B)(3) applies to false testimony by non-parties, the movant must also demonstrate that without the false testimony, the result of the trial might have been different; "and that the party seeking relief was taken by surprise when false testimony was given and was unable to meet it or did not know of its falsity until after trial." Abrahamsen at 428; Goldshot. As we determined in considering Seibert's first assignment of error, Seibert knew that Dr. Congeni's testimony was false during trial, but she did not take steps to secure contradictory evidence until after trial. Therefore, the trial court did not abuse its discretion by declining to grant Seibert's motion for relief from judgment pursuant to Civ.R. 60(B)(3).
{¶ 35} A court may in its discretion grant a Civ.R. 60(B)(5) motion for "any other reason justifying relief from the judgment." Civ.R. 60(B)(5) is intended as a catch-all provision "reflecting the inherent power of a court to relieve a person from the unjust operation of a judgment." Caruso-Ciresi, Inc. v. Lohman (1983), 5 Ohio St.3d 64, 66, citing Staff Note to Civ.R. 60(B); Adomeit v. Baltimore (1974),39 Ohio App.2d 97, 105. The grounds for invoking the catch-all provision should be substantial. Id. Because public policy favors finality of judgments, relief under Civ.R. 60(B) is limited. Pearn v. DaimlerChrysler Corp. (2002) 148 Ohio App.3d 228, 238.
{¶ 36} In this case, to the extent that the Dr. Congeni's testimony affected an injustice upon Seibert, Seibert could have prevented that injustice by taking timely steps to either obtain the impeachment evidence or at least preserve her right to do so. Therefore, public policy supporting the finality of judgments outweighs any injustice in this case. We find that the trial court did not abuse its discretion in denying Seibert's motion for relief from judgment pursuant to Civ.R. 60(B)(5).
 IV.
{¶ 37} In conclusion, we find that the trial court did not abuse its discretion in denying Seibert's motion for a new trial and did not abuse its discretion in denying Seibert's motion for relief from judgment. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.