{¶ 57} I must respectfully dissent, for it is clear to me the trial conducted in this matter was predicated upon several erroneous evidentiary rulings.
 {¶ 58} It is important to review those facts which are not in dispute. It is abundantly clear that the decedent had a heart condition and that his condition caused his death on March 3, 1993. It is equally clear that several medical providers had expressed their concern with his cardiac condition a year earlier. More importantly, it is clear that follow-up monitoring was anticipated by the doctors.
 {¶ 59} Specifically, on January 15, 1992, a physician at Townhall II ordered an echocardiogram and a stress test due to the patient's history of high blood pressure and apparent cardiovascular problems. The tests were never performed. It is important to note that the patient died of an acute cardiac arrest due to coronary artery disease roughly one year later.
 {¶ 60} Based upon these uncontroverted facts, the critical area of inquiry must resolve the question of what Doctor Adler, the cardiologist, was told on February 10, 1992. Reviewing the evidence in a light most favorable to the doctor, he claims that he knew nothing of the tests that had been ordered one month earlier. The doctor claims that based upon his examination he wrote a letter that day to a "Doctor Meckler" at Townhall II advising the patient to undergo "stress echocardiography."
 {¶ 61} Viewing that same evidence in a light most favorable to the decedent, it is clear there is no Doctor Meckler and that the "Doctor Meckler" letter was never a part of the Townhall II records. This can only lead to the conclusion that (1) it was never sent; (2) it was never received; or (3) it was sent, received, and removed from the file.
 {¶ 62} The custodian of records for the file in question is obviously the most competent person to testify as to this matter. Yet the trial court refused to allow the custodian of this critical file to testify at trial.
 {¶ 63} Evid.R. 401 defines relevant evidence as follows:
 {¶ 64} "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 65} At trial, the court apparently permitted the Townhall II "records" to be presented to the jury through a combination of documents which were represented to be the originals contained within the file, when, in fact, they were not. This is a clear violation of the Rules of Evidence. There was ample testimony elicited that the "Doctor Meckler" letter was NOT in the Townhall II records, yet the jury was led to believe it was. This is error.
 {¶ 66} Evid.R. 1002 provides:
 {¶ 67} "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required,
except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio." (Emphasis added.)
 {¶ 68} The "Doctor Meckler" letter was obviously very helpful to the defense. It demonstrates the doctor's suspicion of the cardiac condition which ultimately killed the patient. More importantly, by implication, the letter shifts the light of suspicion on to the shoulders of the patient who did not follow up with the potentially life-saving test.
 {¶ 69} The existence of the letter, therefore, as proposed by the defense; or its non-existence, as proposed by plaintiffs, was the critical factual question to be resolved by the jury. Accepting anything less than the original documents, as verified under oath by their custodian, was an abuse of discretion.
 {¶ 70} In reversing a trial court's similar evidentiary error, the Court of Appeals in Schwochow held:
 {¶ 71} "This court has reviewed the entire record of proceedings in the trial court and the law, and upon consideration thereof we find preliminarily that (a) evidence that Chung altered the office chart was not offered by appellants only to attack the doctor's character for truthfulness but also as being relevant to the ultimate issue of the adequacy of the care which Chung provided to Tony, and therefore it is not prohibited by Evid.R. 608(B); (b) if admitted, this evidence could be considered as relevant to the issue of whether Chung actually considered the possibility of infection when he saw Tony on November 16, 1990; (c) the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury, Evid.R. 403(A); and (d) the trial court abused its discretion by excluding appellants' evidence that Chung had altered the chart."[2]
 {¶ 72} Appellant is correct in the assertion that the Schwochow
holding is directly parallel to the instant matter.
 {¶ 73} The error of admitting anything other than the original certified records in this matter was clearly a violation of the best evidence rule. The court permitted the jury to consider impermissible evidence. Standing alone, such an error may not rise to the level of a reversal. However, in this matter the court compounded the problem by literally ignoring egregious conduct by defense counsel in closing argument.
 {¶ 74} Incredibly, a lawyer was permitted to stand up in open court, with the jury present, and "testify" as to what a doctor in the hallway would have said if he had been called!!! To call the conduct outrageous would be to demean the term. The court's reaction, however, sealed the deed. Upon objection, the court responded "I will have to sustain the objection." Have to? A blatant violation of the Rules of Evidence had occurred right before the court. And the judge "had to" sustain the objection?
 {¶ 75} There was not a fair trial in this matter, and the ending was no different from the beginning. I do not know if Doctor Battles performed his duties within the prescribed standard of care. But I do know that the jury was permitted to weigh that question well outside the Rules of Evidence.
 {¶ 76} Therefore, I respectfully dissent.
[2] Schwochow v. Chung (1995), 102 Ohio App.3d 348, 353.